STATE of North Dakota, Plaintiff
and Appellant,

v.

Annette GRANT, Defendant
and Appellee.

Cr. No. 1044.

Supreme Court of North Dakota.

Jan. 23, 1985.

J.E. Rick Brown, Asst. State's Atty., and Paul D. Weisser, Sr. Law Intern, Grand Forks, for plaintiff and appellant.

Robert A. Feidler, Grand Forks, for defendant and appellee.

VANDE WALLE, Justice.

The State appealed from an order [1] of the County Court of Grand Forks County suppressing evidence. We dismiss the appeal.

---

1. The State's notice of appeal, dated July 27, 1984, states that the appeal is taken "from the Judgment entered in this action by Grand Forks County Court on the 29th day of June, 1984." An amended notice of appeal, dated September 4, 1984, contains identical language. No "judgment" was ever entered in this case; the County Court's ruling was contained in the "Memoran-

dum Decision" issued by the court on June 29, 1984.

Two separate jurisdictional problems are raised by this situation: the State has erroneously designated its appeal as being from a judgment, and, even if the State had designated the appeal as being from the memorandum decision, a memorandum decision generally is not

On November 29, 1983, agents of the North Dakota Drug Enforcement Unit and officers of the Grand Forks Police Department obtained and executed a search warrant authorizing them to search a home located at 3512 Sixth Avenue North in Grand Forks. At approximately 11:30 a.m., while the officers were conducting the search, Annette Grant entered the home with Colleen Clauthier, who resided there, and Clauthier's two small children. Grant and Clauthier had taken the children skating and were returning after stopping at a grocery store. Grant was carrying two large sacks of groceries at the time she entered the home. Grant was taken to another room of the house and interrogated for approximately three to five minutes. At the conclusion of his questioning, the officer asked Grant if he could look into her purse. She asked if she had a choice, and the officer replied, "No, you don't." She then handed the purse to the officer, who unzipped it and inspected the contents. The purse contained two "baggies" of marijuana and a pill bottle containing drug paraphernalia with marijuana residue.

Grant was arrested and charged with possession of marijuana. The court granted her motion to suppress the evidence seized from her purse and the State has appealed.

Grant challenges the State's authority to take the appeal, alleging that the State has failed to file a statement in compliance with Section 29–28–07(5), N.D.C.C.:

"*29–28–07. From what the state may appeal.* An appeal may be taken by the state from:

. . . . .

"5. An order granting the return of property or suppressing evidence, or suppressing a confession or admission, when accompanied by a statement of the prosecuting attorney asserting that the deprivation of the use of the property ordered to be returned or suppressed or of a confession or admission ordered to be suppressed has rendered the proof available to the state with respect to the criminal charge filed with the court, (1) insufficient as a matter of law, or (2) so weak in its entirety that any possibility of prosecuting such charge to a conviction has been effectively destroyed. The statement shall be filed with the clerk of district court and a copy thereof shall accompany the notice of appeal."

The record on appeal indicates that no separate statement was filed with the court and no copy accompanied the State's original notice of appeal, dated July 27, 1984. On September 4, 1984, more than 60 days after entry of the order appealed from, the State filed an amended notice of appeal which stated:

"NOTICE IS HEREBY GIVEN that the above named Plaintiff, State of North Dakota, hereby appeals to the North Dakota Supreme court from the Judgment entered in this action by Grand Forks County Court on the 29th

appealable. We conclude, however, that we have jurisdiction of this appeal.

In *Eisenzimmer v. City of Balfour*, 352 N.W.2d 628 (N.D.1984), the appellant's notice of appeal stated that the appeal was taken from the judgment dated November 1, 1983. No judgment had been entered in the case, but a memorandum of opinion containing the court's final order had been entered on November 1, 1983. We concluded that because no judgment had been entered on November 1, 1983, and because the memorandum of opinion with the court's order was the only document in the record bearing that date, the appeal would be treated as being from the order contained in the memorandum of decision. See also *Martinson Bros. v. Hjellum*, 359 N.W.2d 865 (N.D.1985); *Sacchini v.*

*Dickinson State College*, 338 N.W.2d 81 (N.D. 1983); *Aasmundstad v. Dickinson State College*, 337 N.W.2d 792 (N.D.1983). Although a memorandum decision is generally not appealable, when it contains an order which is intended to be a final order, and the order is one from which an appeal may be taken, we will treat the appeal as an appeal from the order. *State v. Tinsley*, 325 N.W.2d 177 (N.D.1982); *State v. Gelvin*, 318 N.W.2d 302 (N.D.), *cert. denied*, 459 U.S. 987, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982). From the circumstances in this case, we conclude that the memorandum decision was intended as the court's final order. We will therefore treat the State's appeal from the "judgment" as being from the final order contained in the memorandum decision.

day of June, 1984, on the grounds that the deprivation of the use of the property ordered to be suppressed has rendered the proof available to the State with respect to the criminal charge filed with the Court insufficient as a matter of law."

The State claims that the statement contained in the amended notice of appeal satisfies the requirements of Section 29–28–07(5), N.D.C.C. We disagree.

■ The State's attempt to amend its notice of appeal was ineffectual, as it was filed well beyond the 30-day time limit of Rule 4(b), N.D.R.App.P. An amended notice of appeal filed after the time for taking the appeal has run will not be given effect by this court. See *State v. Lawson,* 321 N.W.2d 514 (N.D.1982); *First National Bank of Hettinger v. Dangerud,* 316 N.W.2d 102 (N.D.1982). Thus, the State's attempt to include the required statement in an amended notice of appeal filed after the time for taking the appeal had run does not satisfy the requirement of Section 29–28–07(5), N.D.C.C., that a copy of the statement accompany the notice of appeal.

Prior to our decision in *State v. Freed,* 340 N.W.2d 172 (N.D.1983), we allowed the prosecutor's statement to be filed late where the defendant did not challenge the content of the statement but only the date of its filing. See *State v. Perbix,* 331 N.W.2d 14 (N.D.1983); *State v. Borden,* 316 N.W.2d 93 (N.D.1982); *State v. Fields,* 294 N.W.2d 404 (N.D.1980); *State v. Harris,* 286 N.W.2d 468 (N.D.1979). In *Freed,* however, we denied the State's request for leave to file the statement late and dismissed the appeal. In so doing, we stated:

"The statutory requirement of filing a prosecutor's statement with the notice of appeal has been in effect for over five years. All state's attorneys have had

sufficient time to become fully familiar with its provisions. We can no longer permit our previous admonitions to be disregarded by merely repeating a threat to enforce the requirement. There would be no reason for having a rule or requirement if we did not enforce compliance, nor would the ends of justice be promoted if we were to exercise our discretion to disregard rules without justification." *State v. Freed,* 340 N.W.2d at 175–76.

■ In enacting Section 29–28–07(5), N.D.C.C., the Legislature granted only a limited right of appeal from suppression orders. *State v. Rambousek,* 358 N.W.2d 223 (N.D.1984); *State v. Anderson,* 353 N.W.2d 324 (N.D.1984); *State v. Kisse,* 351 N.W.2d 97 (N.D.1984). The State must make a good-faith evaluation of its case before it appeals from a suppression order. *State v. Anderson, supra; State v. Frank,* 350 N.W.2d 596 (N.D.1984). The purpose of the statutory requirement will be thwarted if we continue to allow the State to ignore it. We will not condone the State's disregard of the statutory requirement, and we therefore dismiss the appeal.

Although we dismiss the appeal, we feel compelled to briefly comment on the important Fourth Amendment issue raised by the State. The State contends that, because Grant entered a home where a valid search warrant for narcotics was being executed, the officers were justified in conducting a "frisk" for weapons, including an examination of the contents of Grant's purse.[2] Other than Grant's mere entry into the home where the search warrant was being executed, there is no evidence to support the State's argument that the search of the purse was in response to the officer's reasonable belief that Grant may have been armed.[3] The State is in effect asking this

---

**2.** We express no opinion, assuming the officer has a reasonable belief that a suspect is armed, on the related issues of whether a purse can be examined as part of a frisk for weapons and whether the officers should have patted down the outside of the purse to feel for hard objects before unzipping the purse and examining its contents.

**3.** The State's position is significantly weakened by the fact that the officers did not testify. The only testimony offered was that of Grant and Clauthier. The State contends that the officer's statement at the time he conducted the search of the purse evidences his belief that Grant may have been armed. Grant testified that as the officer took the purse from her he stated: "I just

court to adopt a *per se* rule: officers may frisk any person who enters upon premises where a valid search for narcotics is being conducted.

The United States Supreme Court rejected such a *per se* rule under similar circumstances in *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In *Ybarra*, officers obtained a warrant to search a tavern and its bartender for narcotics. The officers conducted a "patdown" of all persons in the tavern, and found heroin in a cigarette pack in Ybarra's pants pocket. The Supreme Court held that the "frisk of Ybarra was simply not supported by a reasonable belief that he was armed and presently dangerous, a belief which this Court has invariably held must form the predicate to a patdown of a person for weapons." *Ybarra, supra,* 444 U.S. at 92–93, 100 S.Ct. at 343, 62 L.Ed.2d at 246. The Court concluded:

"The *Terry* case created an exception to the requirement of probable cause, an exception whose 'narrow scope' this Court 'has been careful to maintain.' Under that doctrine a law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted.... Nothing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or indeed, any search whatever for anything but weapons. The 'narrow scope' of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though the person happens to be on premises where an authorized narcotics search is taking place." *Ybarra, supra,* 444 U.S. at 93–94, 100 S.Ct. at 343, 62 L.Ed.2d at 247 [Footnote omitted].

The State contends that *Ybarra* has been impliedly overruled by the Supreme Court's decision in *Michigan v. Summers*, 452 U.S. 692, 702–703, 101 S.Ct. 2587, 2594, 69 L.Ed.2d 340, 349–350 (1981), wherein the Court stated:

"Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." [Footnote omitted.]

In *Summers*, the police detained the defendant, who was attempting to leave his home as officers arrived, while they executed a warrant to search his home for narcotics. The Court specifically distinguished *Ybarra:*

"The 'seizure' issue in this case should not be confused with the 'search' issue presented in *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238. In *Ybarra* the police executing a search warrant for a public tavern detained and searched all of the customers who happened to be present. No question concerning the legitimacy of the detention was raised. Rather, the Court concluded that the search of Ybarra was invalid because the police had no reason to believe he had any special connection with the premises, and the police had no other basis for suspecting that he was armed or in possession of contraband. See *id.,* at 90–93, 100 S.Ct., at 341–343. In this case, only the detention is at issue. The police knew respondent lived in the house, and they did not search him until after they had probable cause to arrest and had done so." *Summers, supra,*

want to make sure you don't have a knife you can pull out and stab me with." We do not believe that the officer's statement, standing alone, evidences a reasonable belief that Grant was armed and dangerous. The State must establish objective facts which form the basis for the officer's reasonable belief that the suspect is armed. Particularly under the fact situation presented in this case, the officer's bald assertion that he was looking for a knife does not evidence a reasonable belief on his part that Grant was armed and presently dangerous.

452 U.S. at 695 n. 4, 101 S.Ct. at 2590 n. 4, 69 L.Ed.2d at 345 n. 4.

■ We do not believe that the directive that officers "exercise unquestioned command of the situation" when executing narcotics search warrants authorizes routine weapons frisks of all persons present at the scene. The officers must form a reasonable belief that the subject is "armed and presently dangerous" before conducting a frisk for weapons.

■ The State can point to no evidence which supports a reasonable belief on the part of the officers that Grant was "armed and presently dangerous." If anything, the circumstances presented in this case militate against such a conclusion. Grant entered the home carrying groceries, accompanied by Clauthier and her two small children. The officer apparently had a discussion with Grant for three to five minutes before he decided to search her purse, and there is no indication that anything which occurred during this interval led the officer to believe she might be armed. The officer never conducted a patdown of Grant's clothes to determine if she was carrying a weapon on her person, and Clauthier, a resident of the home being searched for narcotics, was not frisked or otherwise searched.

We conclude that the officer did not have a reasonable belief that Grant was armed and presently dangerous, and therefore the "frisk" of her purse was in violation of the Fourth Amendment.

The appeal is dismissed.

ERICKSTAD, C.J., GIERKE, J., and PEDERSON, Surrogate Judge, concur.

Surrogate Judge PEDERSON participated in this case by assignment pursuant to § 27–17–03, N.D.C.C.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted.