[No. A047551. First Dist., Div. Three. Jan. 23, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
PAULA JEANETTE PRANCE, Defendant and Appellant.

**COUNSEL**

Sandra K. Hansen, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Gerald A. Engler and Rene Chacon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MERRILL, J.**—This case presents the issue of under what circumstances a warrantless search of the passenger compartment of a vehicle pursuant to lawful custodial arrest, in accordance with *New York* v. *Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860] (*Belton*), may extend to the search of property owned by an individual who is not subject to arrest. The appellant, Paula Jeanette Prance, appeals from a judgment of conviction entered after her plea of guilty to two counts of possession for sale of methamphetamine and two counts of possession of marijuana. She contends that the police illegally searched her personal belongings in the course of an automobile search undertaken pursuant to the arrest of her companion; that the evidence seized as a result of that search should have been suppressed pursuant to Penal Code section 1538.5;[1] and that the trial court erred in denying her motion to dismiss pursuant to section 995. Because we conclude that under the circumstances presented the search of appellant's possessions was not illegal, we find that the trial court did not err in failing to suppress the subject evidence. We therefore affirm the judgment.

### Factual and Procedural Background

Sarah Christopherson, an officer with the East Bay Regional Park District Police, was on patrol at the Lafayette Reservoir near Lafayette, California. At approximately 2:05 in the afternoon, while driving through a parking lot in a marked police vehicle, she noticed a man and a woman, identified as appellant, "sitting extremely close together" on the driver's side of a blue Toyota pickup truck. As she drove by, both individuals in the truck looked directly at her, and appellant quickly moved right to the passenger side of the seat. Christopherson did not stop at that time but on her return she observed that the vehicle was missing its front license plate, a violation of the Vehicle Code.

Officer Christopherson got out of her car and approached the truck. As she did so, she saw the driver quickly hold up a newspaper in front of his body in such a way as to hide the interior of the passenger compartment of

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

the truck. It did not appear as though the driver was reading the newspaper; to the contrary, it looked as if he was intentionally trying to prevent Christopherson from seeing something.[2]

Christopherson advised the driver of the Vehicle Code violation, and asked for his license and truck registration. The driver, who appeared nervous, stated that he did not have a driver's license or other identification with him, and that the truck belonged to his brother. As the driver reached toward the glove compartment, Christopherson asked him to lower the newspaper so that she could see what he was doing, out of a concern for her own safety. She had to ask him at least three times to lower the newspaper before he complied; even then, he did not put the newspaper down totally so she could have an unobstructed view of the interior of the truck. However, she did see a jacket and purse between the driver and his female passenger. The driver produced the vehicle registration from the glove compartment. The registration was for a Toyota truck, and listed the registered owner as Robert Kint.

Officer Christopherson then asked the driver to step out of the truck in order to determine his identity. She did this in accordance with her training and usual procedure of separating individuals when they cannot provide any evidence of identification in order to ascertain whether each individual can separately verify the other person's stated identity. She was also concerned about her safety, in view of the driver's evident nervousness and his apparent attempts to prevent her from viewing the interior of the passenger compartment of the truck.[3]

As the driver opened the truck door and swung his legs out, Christopherson noticed a small glass vial between his legs containing a white substance with the appearance of rock cocaine.[4] As the driver stood up and got out of

---

[2] Officer Christopherson testified that the driver "kept the newspaper up and turned. Like . . . he kept the newspaper up, shielding my view of the floorboards—the seat between the two of them was a bench seat—whatever was in Prance's hands or in her control. I had no view of the dashboard besides the steering wheel, area behind the steering wheel, and I felt that was an issue, there was something he did not want me to see. And I felt I needed to know, have a view of that, interior view of that vehicle for my safety."

[3] In response to a question asking her in what respect she was concerned for her safety, Christopherson testified that "[i]n the respect that I'm on patrol by myself. Here are two people in a vehicle that I have not been allowed to view totally the interior of because of Mr. Kint's actions with the newspaper, upon my request several times, feeling there might be something in there that he does not want me to see, that he might have access to that I can't see or have access to. [¶] So it's the fact that he could not identify himself, he did not possess ID to identify himself, the fact that, his actions with the newspaper, fact I'm on patrol alone and there are two people in that vehicle, as I said, that I have no total view of what's inside that vehicle."

[4] Christopherson testified as to her extensive training in the recognition of controlled substances.

the truck, the vial fell to the floorboard and Christopherson picked it up. The officer told the driver that he was under arrest for possession of a controlled substance, handcuffed his wrists behind his body, gave him a quick patsearch for officer safety, and had him sit on the right rear bumper of the truck.

As this was occurring, appellant got out of the truck on the passenger side, leaned back into the truck, did something on the front seat, closed the door, and then started to walk away, leaving her purse and jacket in the vehicle. When appellant was about five feet from the truck, Christopherson ordered her to stop. She did not do so, but instead continued walking away. The officer ordered appellant to stop a second time, and appellant stopped approximately 10 feet from the vehicle. Christopherson then arrested appellant for possession of a controlled substance and placed her in the rear of her patrol car.

Christopherson's reasons for arresting appellant were as follows: appellant had been sitting very close to the driver when the officer first observed the vehicle; when appellant saw the officer, she quickly moved to the other side of the seat; when the officer approached the truck, the driver acted suspiciously, trying to shield the officer's view of appellant with a newspaper; the driver was apparently in possession of a controlled substance contained in a vial which he was holding between his legs; when the officer arrested the driver, appellant got out of the truck, leaving her purse and jacket behind after doing something with them; appellant started to walk away from the truck on her own, possibly taking away evidence or a weapon; and she continued to walk away after she had been ordered to stop.

After both suspects were arrested, Christopherson examined the vial taken from the floor of the truck and discovered that it contained cotton, not rock cocaine. However, based on her experience, she suspected that it might still contain a controlled substance in the form of hypodermic syringe residue being saved for future use.[5]

The driver was subsequently identified as James Peter Kint. Christopherson radioed for assistance, and Officer Dickey arrived shortly thereafter. Kint was placed in Dickey's patrol car and the pickup truck was searched. A brown manila envelope was found on the floor, containing $315, including fifteen $20 bills. A woman's purse and jacket were located on the right front seat. A pocket of the jacket contained a plastic baggie filled with a white powder substance. The purse contained marijuana, jewelry, $250 (including ten $20 bills) and a paycheck stub bearing appellant's name. A

---

[5] Subsequent analysis revealed that the vial did not contain a controlled substance.

small gold compact case was found in the bed of the truck. It contained two glass vials filled with a white powder substance, an empty vial, a pill, a mirror with white powder residue, and a plastic bag with white powder residue. Appellant was also searched, and $563, including three $100 bills, was found in her pants pocket.

On the basis both of the search of the vehicle incident to the arrests of Kint and appellant, and of the nearly contemporaneous report of a confidential police informant describing quantities of methamphetamine possessed for sale at the residence of Kint and appellant in Concord, a search warrant was obtained for their house. Packages of controlled substances, packaging materials, paraphernalia, marijuana, methamphetamine, cash, weapons, police scanners and other items were found in the residence. It was stipulated at the preliminary hearing that if appellant possessed narcotics, they were possessed for sale.

At the preliminary hearing, appellant moved pursuant to section 1538.5 to suppress evidence obtained as a result of the search of the truck conducted incident to the arrests of Kint and herself, and the subsequent search of her home. The magistrate denied appellant's motion to suppress. He found that Officer Christopherson had probable cause to arrest Kint, on the basis of her reasonable belief that there were drugs or drug residue in the vial which fell to the floorboard; that the officer did not have probable cause to arrest appellant; and that the search of appellant's property could be upheld under *Belton, supra*, 453 U.S. 454, as a search of the contents of the passenger compartment of the truck incident to the lawful custodial arrest of Kint.

Thereafter, appellant brought a motion to dismiss pursuant to section 995. This was denied by the superior court, and appellant changed her plea to guilty to the two counts of possession for sale of methamphetamine and two counts of possession of marijuana.

*Discussion*

■ In proceedings under section 995, it is the magistrate who is the finder of fact; the superior court sits merely as a reviewing court, and must draw every legitimate inference in favor of the information, without substituting its judgment as to the credibility or weight of the evidence for that of the magistrate. On appeal from the denial of a section 995 motion, the appellate court disregards the ruling of the superior court and directly reviews the determination of the magistrate holding the defendant to answer. (*People* v. *Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].)

Appellant does not question the validity of the custodial arrest of Kint.
 The issue raised by this appeal, therefore, is whether the search of appellant's jacket and purse was legally justified as incident to the lawful arrest of Kint, even though the officer knew at the time that these items of personal property did not belong to him.

In the case of *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034] (*Chimel*), the United States Supreme Court held that the permissible scope of a warrantless search incident to a lawful custodial arrest extends to the arrestee and the immediate surrounding area. This was justified both by the need to prevent the concealment or destruction of evidence, and the need to protect the safety interest of the arresting officer by securing hidden weapons. (*Id.*, at p. 763 [23 L.Ed.2d at p. 694].) The court stated that it was "entirely reasonable" for an arresting officer to search for and seize any weapons or evidence on the arrestee's person in order to prevent their concealment or destruction, and that "the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." (*Ibid.*)

The Supreme Court extended the lawful scope of a *Chimel* search to the entire passenger compartment of a vehicle in *Belton, supra*, 453 U.S. 454. In that case, a policeman made a lawful custodial arrest of the four occupants of an automobile. He separated the four occupants, searched each of them individually, and then searched the passenger compartment of the car. On the backseat of the vehicle, he found a black leather jacket belonging to Belton, one of the four arrestees. The policeman searched a zippered pocket in the jacket and found cocaine. Subsequently charged with criminal possession of a controlled substance, Belton moved to suppress the cocaine, arguing that it had been illegally seized from his jacket pocket. The trial court denied the motion, but the New York Court of Appeals reversed, holding that the warrantless search of the zippered pocket of the jacket on the backseat of the car could not be justified as a search incident to an arrest " 'where there is no longer any danger that the arrestee or a confederate might gain access to the article.' " (*Id.*, at p. 456 [69 L.Ed.2d at p. 772].)

The United States Supreme Court reversed. Citing and relying on *Chimel, supra*, 395 U.S. at page 763 [23 L.Ed.2d at p. 694], the *Belton* court sought to establish a "straightforward rule" to clarify the proper scope of a

search of the interior of a vehicle incident to the lawful arrest of its occupants.[6] ▌It therefore held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. [¶] It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. [Citations.]" (*Belton, supra*, 453 U.S. at p. 460 [69 L.Ed.2d at p. 775], fns. omitted.)[7]

▌Appellant points out that the instant case is distinguished from *Belton* by the fact that here, unlike in *Belton*, the items of personal property which were searched did not belong to the lawful arrestee, and the officer knew that they did not. Although the language in *Belton* dealing with searches of items found in the passenger compartment of an automobile is quite broad, that case does not directly address the question of under what circumstances a third party not subject to lawful arrest may assert a privacy interest in personal property found in a vehicle, another occupant of which is subject to lawful arrest.

A review of the record in this case shows that Kint behaved very suspiciously as Officer Christopherson approached the truck and asked him for identification. He held a newspaper up in such a way as to screen the entire inside of the passenger compartment of the vehicle. He appeared to be nervous. Christopherson had to ask Kint three times to lower the newspaper so that she could observe the interior of the vehicle. When he finally did so, Christopherson's view of the inside of the truck cab was still partially obstructed, although she could see appellant's jacket and purse immediately next to Kint on the seat.

---

[6] "When a person cannot know how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority. While the *Chimel* case established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile and the arrestee is its recent occupant. Our reading of the cases suggests the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].' *Chimel*, 395 U.S., at 763. In order to establish the workable rule this category of cases requires, we read *Chimel*'s definition of the limits of the area that may be searched in light of that generalization." (*Belton, supra*, 453 U.S. at pp. 459-460 [69 L.Ed.2d at pp. 774-775].)

[7] In a footnote, the Supreme Court clarified that " '[c]ontainer' here denotes any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like. Our holding encompasses only the interior of the passenger compartment of an automobile and does not encompass the trunk." (*Belton, supra*, 453 U.S. at pp. 460-461, fn. 4 [69 L.Ed.2d at p. 775].)

Clearly, these two articles were within the immediate reach of Kint at a time that he appeared to be intentionally hiding what he was doing from the officer. Either the purse or the jacket could contain a weapon, posing an immediate threat to the officer's personal safety. Similarly, under the circumstances the officer could reasonably believe that Kint had secreted contraband in either the purse or the jacket. ██ ██ In *Belton*, the Supreme Court made it abundantly clear that the basis for a permissible search was not limited to the safety of the officer; the court cited *Chimel* for the proposition that "[s]uch searches have long been considered valid because of . . . the need to prevent the concealment or destruction of evidence." (*Belton, supra*, 453 U.S. at p. 457 [69 L.Ed.2d at p. 773].) These items were therefore within the scope of the kind of search found reasonable and justifiable by the Supreme Court in *Chimel* and *Belton*. Nothing in those cases requires that the areas searched within the reach of the arrestee must themselves be his or her personal property.[8]

It is true that Kint was outside of the truck at the time that the officer searched the purse and jacket. ██ Nevertheless, the Supreme Court in *Belton* specifically extended the scope of a lawful search incident to an arrest to articles within the passenger compartment of a vehicle, even where the arrestee has been moved away from the vehicle and is no longer within reach of such items. (*Belton, supra*, 453 U.S. at pp. 457-462 [69 L.Ed.2d at pp. 772-776].) In *Belton*, the jacket which was searched was in the backseat of the car. It is not clear where Belton was sitting at the time of his arrest; the Supreme Court apparently did not consider it controlling whether or not the items were in the same seat with the person arrested, as long as they were in the passenger compartment. ██ In contrast, here the purse and jacket were on the seat directly next to the arrestee, well within his easy reach, at a time when he was behaving suspiciously and trying to hide what he was doing. In our opinion, the logic of *Belton*'s holding applies with particular force to these facts. We conclude that the search of appellant's purse and jacket was legal under the factual circumstances presented here and the holdings in *Chimel* and *Belton*.

In his dissenting opinion our colleague incorrectly states that we ignore the fact that by the time of the search of appellant's property, both

---

[8] Although it concerned the search of the person of the arrestee, the Supreme Court in *United States* v. *Robinson* (1973) 414 U.S. 218 [38 L.Ed.2d 427, 94 S.Ct. 467], in a decision prior to *Belton*, stated in no uncertain terms that "[i]t is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment. This general exception has historically been formulated into two distinct propositions. The first is that a search may be made of the *person* of the arrestee by virtue of the lawful arrest. The second is that a search may be made of the *area within the control of the arrestee*." (*Id.*, at p. 224 [38 L.Ed.2d at p. 434], italics in original.) In the case at bench, the jacket and purse were certainly situated in an area which was within the control of the arrestee.

appellant and Kint had been handcuffed, patsearched and placed into separate patrol cars. To the contrary, we made it very clear that appellant and Kint were out of the truck at the time of the search, but that while they were still in the truck Kint was in a position to conceal evidence in the purse and jacket which were within arm's reach.

Moreover, a major part of the dissent is spent questioning the legality of the arrest of Kint which is not an issue in the case and is a question the People have not had an opportunity to brief.

### Disposition

The judgment is affirmed.

Strankman, J., concurred.

**WHITE, P. J.**—I respectfully dissent.

Officer Christopherson testified that "Yes" she placed Ms. Prance under custodial arrest for possessing the drugs that she "saw between Mr. Kint's legs as he was getting out of the car; . . ." Christopherson based her belief that the white substance present in the vial was a controlled substance "on all of [her] experience and training." She further testified that she "[knew] from experience that people who use controlled substances when they are in a vehicle together, they're usually in the process of sharing controlled substances." The magistrate concluded, however, that "[s]he did not have the right," i.e., probable cause, to place Ms. Prance under (custodial) arrest for (jointly) possessing "those drugs." He reasoned "it has nothing to do with the fact that she was wrong about them being drugs, . . . she had an inadequate basis [i.e., her experience] to connect Ms. Prance with those drugs." After finding it to be a fact that Officer Christopherson "believed [the basis] she was relying on was that it [i.e., the warrantless search] was subject [incident]—to the arrest of Ms. Prance," the magistrate concluded: "That falls because the arrest of Ms. Prance was not lawful." As regards the lawfulness of Christopherson's arrest, however, the magistrate concluded that "the officer was reasonable in her conclusion—had probable cause to believe initially that there were drugs in the vial, even though there were not drugs in the vial, and that she, therefore, could arrest Mr. Kint and move him away from the vehicle and put him under arrest." The magistrate further found that the police conducted "a *Belton*-type search" of items that "did not and clearly to the officer's knowledge did not belong to the arrestee," i.e., Mr. Kint. This fact raised "an interesting issue" in the magistrate's mind, one that "frankly" he was "able to conjure up reasonable theories that went either way."

The magistrate in the final analysis held Ms. Prance to answer charges on the basis of, I think, his misperception of dictum appearing in *United States v. Vaughan* (9th Cir. 1983) 718 F.2d 332, 334. Vaughan was a backseat auto passenger when the driver was stopped and served with a grand jury warrant for his arrest; a front seat passenger was arrested by warrant for an alleged violation of probation. When the car was stopped by government agents, all three occupants got out. Rather than " 'freeze' " as ordered at gunpoint, Vaughan, with his vinyl briefcase under his arm, attempted to walk away not once but twice. All of which resulted in Vaughan being handcuffed even though probable cause to arrest was lacking. The agents did not know of Vaughan, i.e., neither his identity nor his involvement in a conspiracy to smuggle drugs. An agent seized and fully searched Vaughan's briefcase on the scene without the benefit of a warrant. Fletcher, J., writing for an unanimous panel of the court consisting of Goodwin, J. and Tang, J., held that the briefcase search was not authorized by *New York* v. *Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860]. Judge Fletcher reasoned that no doubt existed as to Vaughan's ownership of the briefcase because he carried it out with him rather than leave it behind in the car. In addition, he was not in the car when his companions were arrested. In words not necessary to the court's decision, Fletcher, J., opined "[i]f he had left the briefcase in the car, admittedly it could have been searched." (*United States* v. *Vaughan, supra*, 718 F.2d at p. 334.)

The magistrate decided that he was going to "defer" to the last above quoted "dicta." He apparently concluded, then, that because Ms. Prance left her purse and blue denim jacket behind on the bench seat of the truck, the park police could under *Belton* constitutionally search her personal possessions contemporaneously incident to Mr. Kint's lawful custodial arrest. As I see his factual findings and separate conclusions, which he thought to be "clear," the magistrate found that Ms. Prance, like Vaughan, was not in the truck when Mr. Kint's arrest became a fait accompli. In addition, the magistrate found, in light of Christopherson's testimony, that "the items searched did not and clearly to the officer's knowledge did not belong to the arrestee," i.e., Mr. Kint. As was the case in Vaughan's instance, then, no doubt existed as to Ms. Prance's ownership of the items searched.

All of the above written to this point is prompted because today the majority attempts to hold constitutionally reasonable Officers Christopherson's and Dickey's warrantless searches of Ms. Prance's purse and blue denim jacket, relying on the authority of the straightforward, workable, bright-line rule of *Belton, supra*, viewing the searches under review as being container searches "contemporaneously incident" to Christopherson's lawful custodial arrest of Mr. Kint. The majority points out that Ms. Prance's

appellate counsel, assigned to her by this court, does not question on appeal the "validity" of Mr. Kint's custodial arrest, an act of omission which I think defies rational explanation. During the 1538.5 hearing, the deputy public defender's cross-examination certainly challenged the lawfulness of Kint's custodial arrest. Over the deputy district attorney's objection that Ms. Prance "does not have standing to object to the arrest of Mr. Kint," the magistrate allowed the questioning because as he stated: "it seems to me to be relevant to the arrest of his client. And presumably, any searches that took place incident to that arrest could be challenged if her arrest was invalid." Further, in making his "clear" factual findings, the magistrate stated: "By the way, one thing I haven't said, I believe Ms. Prance has standing to object to the search of each of those items," i.e., "the jacket and the purse in the car." In addition, respondent's brief concedes that "appellant has standing to raise a Fourth Amendment claim. We do not contend, on appeal, that appellant abandoned property found inside the truck cab by walking ten feet from the truck." Surely the warrantless search of Ms. Prance's purse and jacket, both personal "effects" within the meaning of the Fourth Amendment, raised a Fourth Amendment claim. Even after the truth-in-evidence provision of Proposition 8, both containers carry with them, particularly when closed, a reasonable expectation of privacy sufficient to summon forth the protective guarantees of the Fourth and Fourteenth Amendments. "In the area of Fourth Amendment guarantees, the courts have a vital obligation in warrantless search cases to ensure that citizens' rights are not unreasonably invaded by police activity." Bird, C. J., dissenting in *Tamborino* v. *Superior Court* (1986) 41 Cal.3d 919, 927 [226 Cal.Rptr. 868, 719 P.2d 242].

For my part then, it bears noting, if only in passing, that the prosecution failed to meet its burden to establish as to Mr. Kint a reasonable cause for his warrantless custodial arrest. The prosecution's proof established Officer Christopherson's subjective belief that in her presence Kint possessed rock cocaine, a controlled substance. Christopherson's mind settled upon her belief based on the fact that Kint apparently had between his legs while seated in the truck a small plastic vial best described as containing a white substance. "Best described," that is, because Christopherson seized and pocketed the vial without examining it closely to determine its true content. Instead she arrested, patsearched and handcuffed Mr. Kint's hands behind him.

"Police officers cannot properly claim that probable cause supports an arrest unless 'the facts available to the officers at the moment of arrest would "warrant a man of reasonable caution in the belief" that an offense has been committed.' Officers cannot reasonably conclude on the basis of behavior that is entirely consistent with innocent activity that an offense has

been committed." (*People* v. *Miller* (1972) 7 Cal.3d 219, 225 [101 Cal.Rptr. 860, 496 P.2d 1228], citations omitted.) The fact of Mr. Kint's vial containing cotton appearing as a white substance was entirely consistent with possession of over-the-counter pill medication, an innocent activity. Moreover, "a man of reasonable caution" would have determined that the vial contained naught but innocent cotton by examining it close-up by sight, touch and smell before jumping to Officer Christopherson's unreasonable conclusion. On this question of law, then, my independent judgment, albeit not sought by the parties on this appeal, is opposite from the magistrate's. But, of course, probable cause was a question of law in the magistrate's court, and is one of law when raised in this court.

Manifestly, when I use the legal objective yardstick, i.e., probable cause, to measure the reasonableness and sufficiency of the arresting officer's subjective belief that Mr. Kint had committed a jailable offense, I conclude that Kint's warrantless custodial arrest was unlawful, i.e., unreasonable police conduct prohibited by the federal Constitution and that of our state. Moreover, once Christopherson, in keeping with her training, decided to exercise ordinary caution or prudence, she reasonably discovered that her subjective belief was "wrong," quoting the magistrate. Reasonably, Christopherson concluded both that she in fact had no probable cause to arrest Mr. Kint and further that she had no reasonable basis justifying Mr. Kint's or Ms. Prance's continuing arrest and maximum restraint. Moreover, under the circumstances known to the police, it was at law, subterfuge, pure and simple on their part to attempt justification of their warrantless search as being contemporaneously incident to lawful custodial arrests; whether said to be that of Mr. Kint or Ms. Prance, Officer Christopherson testified that when searching the truck, she was searching for "controlled substances." But, of course, on this record the prosecution has never shown that the officer had probable cause to believe that a controlled substance was anywhere in the passenger cab of the truck. And, of course, a warrantless search is never justified by what it turns up. Further discussion of an issue not framed on this appeal, I say naught.

Now I dissent from the court's majority opinion, recognizing, as I must, that by decision of Ms. Prance's appellate counsel the lawfulness of Mr. Kint's custodial arrest is not at issue on this appeal, albeit an issue of law. In any event, I must dissent.

In my view neither *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034] nor *New York* v. *Belton, supra,* 453 U.S. 454, provides an adequate basis for upholding the warrantless search of appellant's purse and jacket.

To be slightly more precise than the majority, *Chimel* stated: "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule." (*Chimel* v. *California, supra*, 395 U.S. at pp. 762-763 [23 L.Ed.2d at p. 694].)

However, the *Chimel* "immediate-control" test is limited. Once a suspect has been handcuffed outside a vehicle, it cannot be said that he or she has immediate control of the interior of the vehicle (see *United States* v. *McCormick* (9th Cir. 1974) 502 F.2d 281, 286); nor is it likely that he or she has control of the vehicle's passenger compartment after being placed in a patrol car.

My colleagues place great reliance on the fact that appellant's purse and jacket were in immediate reach of Kint while he was still in the truck. They reason that either item could have contained a weapon, posing an immediate threat to the officer's personal safety. However, they ignore the fact that by the time of the search of appellant's property, both appellant and Kint had been handcuffed, patsearched and placed into two separate patrol cars. Under these circumstances the *Chimel* rationale is inappropriate.

Similarly, I do not believe the search of the passenger compartment of a vehicle pursuant to *Belton* extends to the search of property which obviously is owned by an individual for whom there is no probable cause to arrest.

I do not intend to discuss the myriad shortcomings of *Belton* here. Justice Brennan anticipated the difficulties in his dissent. (See *New York* v. *Belton, supra*, 453 U.S. at pp. 463-472 [69 L.Ed.2d at pp. 777-782]; see also 3 LaFave, Search and Seizure (2d ed. 1987) § 7.1(c), pp. 12-21.) Rather, I focus on an individual's Fourth Amendment right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" when that person has not been legally arrested.

The *Belton* reasoning is based in large part on the finding of a lawful custodial arrest: " 'The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would

in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.' " (*New York* v. *Belton, supra*, 453 U.S. at p. 461 [69 L.Ed.2d at pp. 775-776], quoting *United States* v. *Robinson* (1973) 414 U.S. 218, 235 [38 L.Ed.2d 427, 440-441, 94 S.Ct. 467].) The issue that *Belton* did not consider, and with which we are here faced, is what happens to the Fourth Amendment rights of the person for whom there is no probable cause to arrest. There is a paucity of case law on the issue.

In *State* v. *Peck* (1982) 305 N.C. 734 [291 S.E.2d 637], the North Carolina Supreme Court upheld the search of a passenger in a car whose driver had been arrested on a *Terry*[1] stop rationale. In a concurring opinion Justice Mitchell stated he would uphold the search on both *Terry* and *Belton*. He reasoned that since *Belton* authorized the search of containers in the passenger compartment, a patdown of passengers would also be authorized. (*Peck, supra*, at p. 643.)

This reasoning was rejected in *United States* v. *Bell* (6th Cir. 1985) 762 F.2d 495, 499-500, footnote 5: "Because Bell was legitimately possessed of his own expectation of privacy, *Belton* [does] not support the proposition that the search of the passenger compartment of an automobile authorized by *Belton* . . . extends to passengers in a car driven by one who is being arrested pursuant to a warrant."

The municipal court judge and the Attorney General find support for the search of appellant's property in *United States* v. *Vaughan, supra*, 718 F.2d 332. In that case, as heretofore discussed (see this dissent, *ante*, p. 1535), the defendant was a passenger in a car which had been stopped. The driver and another passenger had warrants out for their arrests. The three exited the vehicle and defendant, carrying his briefcase under his arm, started walking away. The police brought defendant back to the car, took the briefcase and opened it. Finding the search unauthorized by *Belton*, the appellate court stated: ". . . Vaughan did not leave the briefcase in the car, nor was he in the car when his companions were arrested. If he had left the briefcase in the car, admittedly it could have been searched." (*Id.*, at p. 334.)

*Vaughan* is inapposite to the case at bench. If Vaughan had left his briefcase in the automobile, the police would not have known to whom it belonged and therefore would have been justified in searching it. To the extent the dicta in *Vaughan* means that the police could search the

---

[1] *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868].

briefcase, knowing that it was the personal property of a person for whom they had no probable cause to arrest, I disagree.

In my view, this case represents the type of pretextual search described in David Silk's Comment, *When Bright Lines Break Down: Limiting New York v. Belton* (1987) 136 U. Pa.L.Rev. 281, 308-311. However, the consequences are even more egregious. I hold that the search of the pickup truck was illegal. Officer Christopherson noticed a vehicle without its front license plate; she went to investigate and arrested Kint when the vial, which she believed contained cocaine, dropped to the floor. However, she searched the passenger compartment of the truck *after* she realized that the vial only contained cotton. Even if such a procedure can be condoned, the question is, what became of appellant's Fourth Amendment right?

If, as I believe, the rationale for *Belton* searches is that a legal custodial arrest justifies an intrusion into the arrestee's right to privacy, there is no justification for the search of the personal property belonging to a person who has not been legally arrested. If the rule is otherwise, any individual relinquishes his or her Fourth Amendment right by riding in a vehicle with another person. Can any citizen be given a guaranty that somebody with whom he or she is travelling is not going to be arrested?

There is no question in the case at bench that Officer Christopherson knew the purse and jacket in the pickup truck belonged to appellant. She stated that these items obviously did not belong to Mr. Kint. Since the search of appellant's property cannot be justified as incident to her lawful custodial arrest, evidence of the contents of defendant's property should have been suppressed.

Accordingly, I would reverse the judgment and remand the cause to determine the sufficiency of the affidavit in support of the search warrant for appellant's home.

A petition for a rehearing was denied February 21, 1991, and appellant's petition for review by the Supreme Court was denied April 11, 1991. Mosk, J., Broussard, J., and Kennard, J., were of the opinion that the petition should be granted.