**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Craig A. GILBERTS, Defendant and Appellant.**

**Cr. No. 920207.**

Supreme Court of North Dakota.

Feb. 23, 1993.

Robert Allan Freed (argued), Asst. State's Atty., Jamestown, for plaintiff and appellee.

Paulson and Merrick, Jamestown, for defendant and appellant, argued by Thomas E. Merrick.

MESCHKE, Justice.

Craig Gilberts appeals from his conviction for unlawful possession of cocaine. Gilberts entered a conditional guilty plea under NDRCrimP 11(a)(2), reserving the right to appeal from the trial court's denial of his motion to suppress evidence. We hold that the officer's search of Gilberts's jacket violated Gilberts's Fourth Amendment rights against unreasonable search and seizure, and that the trial court erred in refusing to suppress the evidence from that invalid search. We reverse the conviction and remand with directions that Gilberts be allowed to withdraw his guilty plea.

Gilberts was a passenger in the front seat of a car that was stopped for speeding at about 1:00 p.m., October 5, 1991, by Highway Patrolman Bradley Smith. Another passenger was sitting in the back seat of the car. When the driver could not produce a driver's license, Smith asked him to sit in the patrol car. A radio check by Smith disclosed that the driver's operating privileges were suspended, and Smith arrested the driver.

Smith testified that he "secured the driver in the back seat of my patrol vehicle" and then went back to search the car "incident to the arrest of the driver." Smith opened the front passenger door and asked Gilberts to "step out and just walk around to the front of the vehicle." As Gilberts stepped out, Smith picked up a jacket "sitting on the seat right where [Gilberts] was sitting," intending to give it to Gilberts, "because it was cold out." Smith asked Gilberts if the jacket was his, and Gilberts said that it was. As Smith handed the jacket to Gilberts, he noticed an unspecified "large amount of cash" in the inside pocket. Smith testified that there were actually two jackets, one with the sleeves inside the other, and that the cash was located in a pocket in the inside jacket. Seeing the cash, Smith reached into the pocket and pulled out the cash and a small box. The box was marked on the outside that it contained a gram scale. Smith opened the box, pulled out the scale, and saw that there was "white powder residue" on the inside of the scale. Smith told Gilberts that he was going to keep the scale to have the powder analyzed. Gilberts replied that he knew the scale had been used to weigh cocaine. Smith then arrested Gilberts for unlawful possession of a controlled substance.

Gilberts argues that Smith violated his rights under the Fourth Amendment and Art. I, § 8 of the North Dakota Constitution against unreasonable search and seizure. First, he asserts that it was unreasonable for Smith to order him, a passenger, to step out of the car following the driver's arrest. Secondly, he asserts that Smith's search of his jacket incident to the driver's arrest was unreasonable.

■ Some of Smith's activities were clearly valid and are not contested by Gilberts. Smith had an articulable and reasonable suspicion that the driver was violating the law by speeding, and Smith made a valid investigative stop of the car. *Wibben v. North Dakota State Highway Commissioner*, 413 N.W.2d 329 (N.D.1987). When the driver could not produce a license and Smith learned by radio that the driver's license was suspended, Smith had probable cause to arrest the driver for the class B misdemeanor of operating a vehicle with a suspended license. NDCC 39–06–42. Smith was then entitled to make a custodial search incident to the driver's arrest. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). Incident to the arrest, Smith was entitled to search the arrestee's person and the area within the arrestee's immediate control where he might have a weapon or destructible evidence. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The right to search an automobile incident to arrest of its occupants includes the right to search the entire passenger compartment of the automobile. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Gilberts does not dispute Smith's right to conduct these activities leading up to and following the driver's arrest.

■ However, Gilberts asserts that his Fourth Amendment rights were violated when Smith asked him to exit the automobile and when Smith searched Gilberts's jacket. Within the meaning of the Fourth Amendment, a seizure occurs whenever an officer stops an individual and restrains his freedom, and that seizure must be reasonable. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In determining reasonableness, we balance the public interest with the individual's right to personal security free from arbitrary interference by police officers. *State v. Mertz*, 362 N.W.2d 410 (N.D.1985). The focus of our analysis then is whether Smith's order that Gilberts exit the car was reasonable.

The United States Supreme Court has held that, once a motor vehicle has been lawfully stopped, a police officer may order the driver to get out of the vehicle and, in doing so, does not violate the driver's Fourth Amendment rights. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). The rationale of *Mimms* is police safety. By ordering the driver out of the stopped vehicle, the offi-

cer can better watch the driver's movements while he is investigating the situation, and can have the driver step to a safe place away from traffic.

Gilberts asserts that this case is different. He argues that neither the lawful stop of the vehicle in which he was a passenger nor the arrest of the driver justified Smith's invasion of Gilberts's privacy by ordering him out of the car. Gilberts emphasizes that he had not violated any traffic laws, and that he was not under suspicion of having committed any other crime when Smith asked him to exit the car.

■ We believe there are two grounds that justify Smith's request that Gilberts exit the car, and that make this brief intrusion upon Gilberts's privacy both reasonable and permissible under the Fourth Amendment. First, an officer is justified by safety reasons in ordering both the driver and the passengers out of a lawfully detained vehicle. *Bethea v. Commonwealth*, 14 Va.App. 474, 419 S.E.2d 249 (1992); *People v. Martinez*, 187 Mich.App. 160, 466 N.W.2d 380 (1991); *State v. Ferrise*, 269 N.W.2d 888 (Minn.1978). When the state's interest in the protection and safety of its police, who patrol the roadways, is weighed against the minor intrusion on a passenger's liberty in momentarily leaving a vehicle, safety predominates. Secondly, Smith was entitled to search the passenger compartment of the vehicle incident to the driver's arrest. *Belton.* To conduct the search safely and thoroughly, it was both necessary and reasonable for Smith to ask Gilberts and the other passenger to briefly leave the car. *United States v. Bell*, 762 F.2d 495 (6th Cir.1985). We hold that Gilberts's constitutional right to be free of unreasonable seizure was not encroached when Smith ordered him out of the car for the search after the driver's arrest.

■ Gilberts also argues that Smith's search of his jacket was unreasonable and violated his Fourth Amendment rights. The State counters that, under the Supreme Court's rationale in *Belton*, Smith was entitled to search the entire passenger compartment of the car and all containers

in it, including Gilberts's jacket, incident to the driver's arrest. In the alternative, the State argues that Smith's search of the jacket was legal, because Smith had probable cause to believe that Gilberts and the other car occupants were involved in illegal drug trafficking and that the jacket might contain contraband.

We begin our discussion of this question with a brief analysis of *Belton.* In that case, the United States Supreme Court announced a bright-line rule for the scope of the search of an automobile after the lawful arrest of all of its occupants. In *Belton*, where all four occupants were arrested, the Court held:

> [W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.
>
> It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach.... Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that *the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.*

453 U.S. at 460–61, 101 S.Ct. at 2864, 69 L.Ed.2d at 775, [Citations omitted, emphasis added.] Following *Belton*, this court in *State v. Hensel*, 417 N.W.2d 849 (N.D. 1988), held that the lawful custodial arrest of a person, who was found "slumped over" in the front seat of a car and who was then in physical control of the car, justified the officer's search of the arrestee's suitcase and jacket in the passenger compartment of the car. In *Belton* and *Hensel*, all occupants of the vehicles were arrested before the search of the vehicles.

Consequently, neither *Belton* nor *Hensel* dealt with an officer's search of a nonarrested occupant. Here, Gilberts was not

an arrestee, but merely a passenger in the vehicle with a driver who was driving without a license. We believe this factual distinction limits a *Belton* search of the vehicle.

 Warrantless searches, to be valid, must fall within a narrow and specifically delineated exception to the warrant requirement of the Fourth Amendment. *Thompson v. Louisiana*, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984). The scope of a search must be strictly tied to and justified by the circumstances that permit its initiation. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A fundamental tenet of Fourth Amendment analysis is that a search or seizure of a person must be supported by probable cause particularized with respect to that person. *United States v. Di Re*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); *see also U.S. v. Almanzar*, 749 F.Supp. 538 (S.D.N.Y. 1990). Usually, mere association with a known or suspected criminal or presence at the scene of a crime is not probable cause.

The United States Supreme Court succinctly underscored the individualized nature of the protections afforded to each person by the Fourth Amendment in *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 245 (1979):

> [A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.... Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. The Fourth and Fourteenth Amendments protect the "legitimate expectations of privacy" of persons, not places.

[Citation omitted.]

In *Ybarra*, officers had a warrant to search a tavern and its bartender for narcotics. The officers conducted a pat down of all persons in the tavern and found heroin in a cigarette pack in Ybarra's pants pocket. The Supreme Court held that the frisk of Ybarra was unconstitutional because the search was not supported by the individualized reasonable belief that Ybarra was armed and presently dangerous, the belief that *Ybarra*, 444 U.S. at 93, 100 S.Ct. at 343, declared "this court has invariably held must form the predicate to a pat down of a person for weapons."

Following the *Ybarra* rationale, this court in *State v. Grant*, 361 N.W.2d 243 (N.D.1985), held that officers who frisked a woman's purse while conducting a valid warrant search of a home for narcotics violated the woman's Fourth Amendment rights, because the officers did not have an individualized, reasonable belief that this woman, who happened to come into the home while the search was being conducted, was armed and presently dangerous.

When Smith reached into Gilberts's jacket pocket he knew that the jacket belonged to Gilberts, not the arrested driver. Furthermore, Smith had seen that the jacket had been "draped down around [Gilberts's] back" and that Gilberts was "kind of sitting on it." Under these circumstances, we hold that the *Belton* rationale does not justify Smith's search of Gilberts's jacket. Standing alone, the driver's arrest was an inadequate ground for this intrusion upon Gilberts's constitutional rights against unreasonable search and seizure of his person and property.

The State urges that the California case of *People v. Prance*, 226 Cal.App.3d 1525, 277 Cal.Rptr. 567 (Cal.App. 1st Dist.1991), is directly on point and supports Smith's search of Gilberts's jacket. In *Prance*, the California Court of Appeals considered when the warrantless search of the passenger compartment of a vehicle, pursuant to the lawful custodial arrest of the driver, might extend to the search of property owned by a passenger in the vehicle who is not subject to arrest. A review of the facts is desirable for understanding the court's decision in *Prance*.

A police officer observed a man and woman "sitting extremely close together"

in a pickup located in a parking lot. When they saw the officer, the passenger moved quickly to the passenger's side of the vehicle. The officer, observing that the pickup was missing its front license plate, approached the vehicle. The driver, seeing the police officer approaching, held a newspaper in front of him in such a way as to hide the interior of the passenger compartment. The officer informed the driver of the license-plate violation and asked for a driver's license. The driver responded that he did not have a license or other identification with him. The officer asked the driver several times to lower the newspaper so she could see what he was doing in the truck. The driver reluctantly complied, but even then the officer did not have a clear view of the pickup's interior compartment. However, the officer did see a jacket and purse lying between the driver and the female passenger. The officer then asked the driver to step from the truck. As the driver opened the door, the officer saw between the driver's legs a small, glass vial containing a white substance that appeared to be rock cocaine. The officer arrested the driver.

As this was occurring, the passenger stepped out of the truck, and walked away, leaving her purse and jacket in the vehicle. The officer immediately arrested the passenger, but the courts later determined that this was an invalid arrest, without probable cause. The officer then searched the interior of the pickup and found drugs in the passenger's jacket and purse. The passenger later pled guilty to possession for sale of illegal drugs, subject to her right to appeal the denial of her motion to suppress the evidence found during the search of her jacket and purse.

The California court upheld the search of the passenger's purse and jacket incident to the driver's arrest. In upholding the search, the court emphasized that the purse and jacket were in the "immediate reach" of the driver, that the driver appeared to be intentionally hiding activity in the pickup, and that the passenger, after stepping out of the pickup, leaned back into it and did something on the front seat before walking away and leaving her purse and jacket there. The California court concluded that the police officer had particularized reasons to believe that the driver had secreted contraband or a weapon in the purse and jacket, and that the officer was justified in searching those items.

The facts in this case are different than those in *Prance*. Here, the driver was merely arrested for operating his vehicle with a suspended license, not for a drug violation. Smith did not see any suspicious activity in the car before the driver's arrest and, before searching Gilberts's jacket, Smith knew that Gilberts had been sitting on it. Unlike the circumstances in *Prance*, there was no suspicious activity by either the driver or occupants that gave Smith reason to believe that the arrestee had secreted contraband or a weapon in Gilberts's jacket. Therefore, we are unpersuaded that *Prance* is precedent that justifies Smith's search of Gilberts's jacket.

The State argues, alternatively, that Smith was justified in searching Gilberts's jacket because he had a reasonable suspicion that all of the occupants in the car were illegally trafficking drugs and that the jacket might therefore contain contraband. However, Smith's testimony reveals that he did not conduct the search of the car or Gilberts's jacket on a suspicion of illegal drug activity. Smith testified that he searched the interior of the vehicle, including the jacket, because he believed he had a right to do so incident to the driver's arrest. He also testified that he did not really suspect drug activity until after he had searched the jacket:

> When I saw that it was a gram scale and the large amount of cash and that, then that's when I started thinking that there was more going on than just, you know, going to Denver just for a trip.

The State argues that Smith's observations after stopping the car gave him reason to believe that the men fit a drug courier profile, thereby giving him probable cause to search the jacket for drugs. *See State v. Everson*, 474 N.W.2d 695, 702, n. 2 (N.D.1991) ("Trained law enforcement officers may observe and be able to perceive and articulate meaning to presumably innocent conduct which may pass without notice by an untrained observer"). The alleg-

edly relevant observations by Smith were that three young men were making a quick trip from Fargo to Denver, a city known to Smith as a "drugstore city;" that the three were traveling with very little luggage; and that the men had a considerable amount of cash that Smith saw sticking out of Gilberts's jacket pocket. The problem with these observations is that they "describe a very large category of presumably innocent travelers, who would be subject to virtually random seizures" if the officer's "profile" was sufficient to warrant a search of their property. *Reid v. Georgia,* 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890, 894 (1980); *see also Derricott v. State,* 327 Md. 582, 611 A.2d 592 (1992). We conclude that Smith did not have reason to believe that Gilberts's jacket contained contraband when he searched it.

We further conclude, therefore, that the search of the jacket was an unjustifiable invasion of Gilberts's rights against unreasonable search and seizure. We hold that the trial court erred in denying Gilberts's motion to suppress evidence garnered as a result of the illegal search of his jacket. The conviction is reversed and the case is remanded with directions that Gilberts be given an opportunity under NDRCrimP 11(a)(2) to withdraw his guilty plea.

LEVINE, J., concurs.

Surrogate Judge RALPH J. ERICKSTAD was Chief Justice at the time this case was heard and served as surrogate judge for this case pursuant to Section 27–17–03, N.D.C.C.

Justice J. PHILIP JOHNSON, who was a member of the Court when this case was heard, did not participate in this decision.

Justice NEUMANN and Justice SANDSTROM, not being members of the Court when this case was heard, did not participate in this decision.

VANDE WALLE, Chief Justice, concurring specially.

So much for the "bright-line" test for determining the scope of a search of an automobile pursuant to a lawful custodial arrest as established by *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). The *Belton* decision was prompted by the need to establish straight forward and workable rules to apply to the scope of a search of an automobile after the arrest of the occupant. *State v. Hensel,* 417 N.W.2d 849 (N.D.1988). In *Hensel,* we cited the *Belton* decision as permitting a search of containers in the passenger compartment and noted that, under *Belton,* containers include any object capable of holding another object, including clothing.

Although the majority distinguishes *Belton* and *Hensel* on their facts, the distinction serves to blur the avowed purpose of the *Belton* decision to establish a bright-line test for determining the scope of search of an automobile.

The majority relies on *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), for its holding. I would distinguish *Ybarra* on its facts, i.e., it was not an automobile search and Ybarra was wearing the pants which were searched.[1] If we are to acknowledge the purpose behind the rationale of the bright-line test of *Belton* and the rationale of *Ybarra,* it would be that the officer is entitled to search any clothing in the automobile that is not actually being worn by the passenger.

Because the jacket, although not actually worn by Gilberts, was "draped around his neck," I believe this is a close case. Because of these circumstances, but recognizing, as I do, that it does blur the "bright-line" test of *Belton,* I reluctantly concur in the result reached by the majority.

RALPH J. ERICKSTAD, Surrogate Judge, concurs.

---

1. I would also distinguish *State v. Grant,* 361 N.W.2d 243 (N.D.1985), cited by the majority. It, like *Ybarra,* did not involve a search of a container in an automobile and is not subject to the *Belton* bright-line test.