**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**David Rowland Lee VAUGHAN,**
**Defendant-Appellee.**

**No. 82–1717.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 6, 1983.

Decided Oct. 14, 1983.

Roger W. Haines, Jr., Asst. U.S. Atty., argued, Peter K. Nunez, U.S. Atty., Roger W. Haines, Jr., Asst. U.S. Atty., on the brief, San Diego, Cal., for plaintiff-appellant.

Michael J. McCabe, San Diego, Cal., for defendant-appellee.

Before GOODWIN, TANG, and FLETCHER, Circuit Judges:

FLETCHER, Circuit Judge:

This is an interlocutory appeal by the United States from an order of the District Court granting appellee Vaughan's motion to suppress evidence. Jurisdiction over this appeal exists under 18 U.S.C. § 3731 (1976).

# I

## Factual Background

This case arises out of the Government's efforts to investigate and prosecute the members of a large-scale drug smuggling conspiracy. Only the facts surrounding the search and seizure of Vaughan's vinyl briefcase are at issue here.

On November 5, 1981, appellee Vaughan was riding in the back seat of a car driven by Edward Otero. Robert Lahodny was a passenger in the front seat. Agent Clem of the San Diego Narcotics Task Force stopped the car about two blocks from Lahodny's house. Otero had been indicted by a grand jury and a warrant was out for his arrest. The agents also had a probation violation warrant for Lahodny. At this time, the agents did not know the identity of appellee.[1]

When the car was stopped all three people got out. Agent Clem drew his gun and ordered them to "freeze." Vaughan, carrying the briefcase under his arm, started to walk away.[2] Agent Clem brought Vaughan back to the car and Vaughan started walking away again. Agent Clem again brought Vaughan back to the car, took the briefcase from him and handcuffed him. By this time three other agents were on the scene, Hicks, Lunsford and Sheipe, who assisted in handcuffing the other occupants of the vehicle.

Agent Hicks then picked up the vinyl briefcase and opened it. Hicks observed two driver's licenses in the briefcase with Vaughan's picture on both. One of the licenses was in Vaughan's name and the other was in another name. Appellee was then removed from the scene in Clem's truck and taken about two blocks to Lahodny's house. Agent Hicks again searched the briefcase, more thoroughly this time, and found an airline ticket and several notebooks. The agents also removed from the trunk of the car a brown hard-cover briefcase and a suitcase belonging to Vaughan.

The next day the agents obtained a search warrant to search the brown briefcase and the suitcase. The government admits that the affidavit to support the search warrant "relied in significant part on the false driver's license and drug smuggling notebooks found in Vaughan's vinyl briefcase."

# II

## New York v. Belton is Not Applicable To This Case

■ The Government asserts that the search of the briefcase was proper under *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Alternatively, the Government argues that the search was proper under a "frisk of companions" doctrine and *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967).[3] For the reasons discussed below, we reject both of these arguments and affirm the order of the District Court.

The *Belton* holding is an extension beyond what was previously thought permissible to be searched without a warrant. It is a bright-line rule that the Court thought would provide clear guidance to police officers in the field. Any extension beyond the exact limits set by *Belton* (objects within the passenger compartment of the vehicle) would open a new set of temporal and spacial uncertainties, as well as increase the

---

**1.** The chronology of events is somewhat unclear because the government agents gave conflicting descriptions of the arrest and search. We rely on the stipulated facts agreed on by the U.S. Attorney and defendant in the District Court.

**2.** The briefcase is described as being a vinyl briefcase with a clamp type top, measuring about one foot by two feet and approximately one inch to one and a half inches thick, with a soft pliable exterior.

**3.** The government, in anticipation of a favorable ruling by the Supreme Court in *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), also argued that the search was proper because the officers were acting in "good faith." That issue remains unresolved by the Supreme Court and is not the law in this circuit.

likelihood of unjustified invasion of the privacy of individuals.

The district court was correct in concluding that the search here is not authorized by *Belton.* Appellee Vaughan did not leave the briefcase in the car, nor was he in the car when his companions were arrested. If he had left the briefcase in the car, admittedly it could have been searched. But he didn't leave it behind. He carried it out with him and no doubt existed as to his ownership of the briefcase.

Two other interrelated theories have been advanced to justify the search. The government asserts that the search was proper incident to a lawful arrest or, under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 to protect the officers.

### III

### *No Probable Cause Existed to Arrest Vaughan*

■ Neither party disputes the fact that, at the time of the stop, the agents were ignorant of Vaughan's identity. Even if they had been aware of his identity, no warrant had been issued for his arrest and the agents were not aware of any involvement by him in the conspiracy. At the time Vaughan was stopped and the vinyl briefcase was initially searched, the agents had not even asked Vaughan for any identification. Thus, for all the agents knew at the time they detained Vaughan and searched his briefcase, he could have been a hitchhiker.[4] Thus, no probable cause existed to arrest appellee and the search cannot be justified on this ground.[5]

Despite the lack of probable cause to arrest Vaughan, the police had a right to detain him briefly to ascertain whether any

evidence that might be located on the person of Otero and Lahodny or in the car could incriminate him and to engage in a limited *Terry* "stop and frisk" to determine that he had no weapons that might endanger the officers.

### IV

### *A Brief Detention of Vaughan was the Limit of the Agents' Authority.*

■ The agents had a right to detain Vaughan briefly while they searched his companions. *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). In *Summers,* police officers were about to execute a warrant to search a house for narcotics when they encountered the defendant descending the front steps. They detained him and eight other occupants of the house while they searched the house. After the police found narcotics in the basement and ascertained that the defendant was the owner of the house, they arrested him, searched him, and found heroin in his coat pocket. The Supreme Court upheld the detention while the search was in progress.

In upholding the detention, the court noted that the detention was substantially less of an intrusion than an arrest, being comparable to the stop and frisk of *Terry.* The Court justified the detention:

> Most obvious is the legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found. Less obvious, but sometimes of greater importance, is the interest in minimizing the risk of harm to the officers .... Finally, the orderly completion of the search may be facilitated if the occupants of the premises are present.

---

**4.** Appellee Vaughan must be considered to be "seized" for purposes of Fourth Amendment analysis from the point at which he tried to walk away and was forcibly detained. The Government has not argued otherwise. *See Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889; *Michigan v. Summers,* 452 U.S. 692, 696, 101 S.Ct. 2587, 2590–2591, 69 L.Ed.2d 340 (1980). The point at which he was "arrested" is not so clear, but appears to be when he was taken from the scene in Agent

Clem's truck. Since we hold that no probable cause existed to arrest Vaughan and that the agents could only "pat down" the briefcase, the resolution of this issue is not necessary.

**5.** The fact that he was in the company of persons for whom a warrant had been issued does not constitute probable cause. *See Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979).

452 U.S. at 702–03, 101 S.Ct. at 2594. The Court also placed great reliance on the fact that a warrant existed to search the house, "[t]hus a neutral magistrate rather than an officer in the field has made the critical determination that the police should be given a special authorization to thrust themselves into the privacy of a home." *Id.* at 703, 101 S.Ct. at 2594.

The same factors justify Vaughan's detention. This was not a routine traffic arrest of a driver of a vehicle. Rather, warrants had been issued to arrest Otero and Lahodny and, pursuant to the arrests, the officers had the authority to search the passenger compartment of the car. If the search had turned up any evidence to incriminate Vaughan, he could have been arrested also. The officers were fully justified in preventing Vaughan from walking away, but no evidence to justify searching Vaughan was discovered.[6]

While they were detaining him at the scene, it was reasonable for the officers to engage in a limited *Terry* frisk to determine if he had any weapons. The District Court was not clearly erroneous in finding that the agents could have felt the briefcase without opening it to see if any weapons were in it and that the opening of the case to search further was not justified. The briefcase was soft and thin. Any weapons could have been felt through the cover. Thus, the officers had no reason to open it to protect their safety. "[A] search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope." *Terry v. Ohio,* 392 U.S. at 18, 88 S.Ct. at 1878.[7]

## V

## CONCLUSION

We hold that the agents had a right to detain Vaughan briefly while they searched Otero and Lahodny and passenger compartment of the car and that under *Terry v. Ohio,* the agents had the right to frisk

---

**6.** The Supreme Court's opinion in *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), suggests that the officers could not even detain Ybarra while they searched the bar in which he was present, absent sufficient cause to sustain a *Terry* stop and frisk. At first glance, the case seems to be at odds with the Court's opinion in *Summers.*

These cases are not contradictory, however, for the relationship among the patrons of a bar is quite different from the relationship among the occupants of a house or car. *Cf. United States v. Micheli,* 487 F.2d 429, 430–32 (1st Cir.1973) (warrant to search private home envisions different scope than warrant to search public place). One would anticipate the presence of strangers in the bar. By contrast one would expect that persons in a house or car are there by invitation or consent. This logical presumption is enough to justify the detention in the house while the search is in progress to ascertain if, in fact, some connection exists between the suspects. Or, in the case at hand, to ascertain whether any evidence incriminating Vaughan will turn up, or whether Vaughan is not carrying a weapon that might endanger the agents. The presence of Vaughan in a passenger car with two persons for whom warrants had been issued gives reason *briefly* to detain him that was absent in *Ybarra* but present in *Summers.*

**7.** Persons detained during a search for evidence cannot be searched according to *Ybarra* simply because they are there. The *Ybarra* court held that the search of a patron of a bar was not permissible incident to a search of the bar pursuant to a warrant. In the case at hand, the only suspicion the agents had of Vaughan's criminal activity was his presence in the car with Otero and Lahodny. This is insufficient under *Ybarra,* where the Court said, "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." 444 U.S. at 91, 100 S.Ct. at 342, citing *Sibron v. New York,* 392 U.S. 40, 62–63, 88 S.Ct. 1889, 1902–1903, 20 L.Ed.2d 917 (1968).

Although the *Ybarra* opinion holds only that the search of Ybarra and the seizure of what was in his pockets was improper, this conclusion was based on the court's finding that the officers had insufficient cause to engage in a *Terry* "stop and frisk." *See* 444 U.S. at 92–93, 100 S.Ct. at 342–343. The statute under which the Illinois police were operating authorized the detention and search of any person on the premises. *See id.* at 87, 100 S.Ct. at 340. The court said, in dicta, that "a search or seizure of a *person* must be supportable by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize *another* or to search the premises where the person may happen to be." *Id.* at 91, 100 S.Ct. at 342. (emphasis added).

Vaughan for their own safety. The district court was not clearly erroneous in finding that any weapons could have been detected without the opening of the vinyl briefcase and that any search beyond that was unwarranted.[8] We affirm the district court's suppression order.

---

**8.** The government admits that the affidavit in support of the search warrant relied significantly on the illegally seized evidence. It follows that the warrant is invalid and any evidence seized pursuant to it must also be suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 487–488, 83 S.Ct. 407, 417–418, 9 L.Ed.2d 441 (1963).