**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Steven Miles JOHNSON,
Defendant–Appellant,**

**No. 90–7050.**

United States Court of Appeals,
Fifth Circuit.

May 23, 1991.

Timothy W. Crooks, Asst. Federal Public Defender, Ira R. Kirkendoll, Federal Public Defender, Fort Worth, Tex., for defendant-appellant.

Richard G. Roper, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Fort Worth, Tex., for plaintiff-appellee.

ON SUGGESTION FOR
REHEARING EN BANC

Before JOHNSON, SMITH and WIENER, Circuit Judges.

PER CURIAM:

Treating the suggestion for rehearing en banc as a petition for panel rehearing, IT IS ORDERED that the petition for panel rehearing is DENIED. No member of the panel nor judge in regular active service of this court having requested that the court be polled on rehearing en banc (Federal Rules of Appellate Procedure and Local Rule 35), the suggestion for rehearing en banc is DENIED.

In his suggestion for rehearing en banc, the assistant federal public defender representing Johnson vigorously insists that the District of Columbia Circuit decided *United States v. McClinnhan*, 660 F.2d 500 (D.C. Cir.1981) "incorrectly." He is adamant that *McClinnhan, Id.*, is "incorrect" under

the principles espoused by *Terry*[1] and *Arkansas v. Sanders*,[2] as interpreted by *Flippin*,[3] and that *McClinnhan* "creates a rule of *automatic* exigent circumstances wherever there is any container in the vicinity of a *Terry* detainee."

By implication counsel for Johnson tars this court's instant decision with the same brush. We suggest that counsel re-read those cases, paying particularly close attention to the factual distinctions among them as well as with the instant case.

First, counsel's conclusion that *McClinnhan* creates a rule of automatic exigent circumstances constitutes hyperbole which can only be excused by condoning the fervor with which counsel seeks to represent the interest of his client. He relies heavily on *Flippin*, but that case so differs factually from the instant case as to be inapposite. The incident in *Flippin* took place in a motel room characterized by the court as the abode of the defendant. In the "home" setting the court gave special deference to the fourth amendment, a deference to which Johnson is not entitled because he was outside of a residence he neither owned nor occupied. Because the district court in *Flippin* suppressed the evidence of the gun found inside the rigid cosmetics case, suppression was entitled to deference on appeal. In the instant case, however, the district court refused to suppress the evidence of Johnson's gun, so deference ran in favor of the government. But even in *Flippin*, wherein the Court of Appeals for the Ninth Circuit reversed the suppression by the district court and allowed the evidence of the gun found in the cosmetics kit, the case was decided on the basis of exigent circumstances related to the potential danger to the officer and others, relying heavily on *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), which recognized a lower standard than probable cause under such circumstances.

Moreover, the Ninth Circuit distinguished *Flippin* from *United States v. Vaughan*, 718 F.2d 332 (9th Cir.1983), wherein evidence found in the warrantless search of a soft briefcase was suppressed because the officer, who claimed he was looking for a weapon when he opened the soft container, could have just as effectively "patted down" the pliable container without opening it. Even in *Vaughan*, the Ninth Circuit implied that if a pat-down of the soft container had revealed the location of a weapon within, evidence of the weapon would not have been suppressible.

Johnson's principal error in urging a rehearing en banc is in clinging too rigidly to *Terry*. He does not (and could not) contend that a *Terry* pat-down was improper, given the articulated facts substantiating probable cause. Rather, he grounds his complaint in the officer's removal of the gun from the open pocket of the coveralls, miscasting that act as an unwarranted extension of *Terry*. But the seizure of the gun was not, strictly speaking, the result of extending a *Terry* pat-down from the permitted frisk of outer garments worn by the detainee to palpating other nearby, unworn garments of the detainee. The operable facts in the instant case, as found by the district court which credited the version of the incident told by the police officers over the version proffered by the defendant, were (1) the pistol seized in evidence was found in an open pocket of coveralls, (2) the coveralls were in "plain view" of the officer, not rolled, folded and packed in a duffel bag as contended by Johnson, (3) the coveralls were within easy "lunge reach" of Johnson, and (4) the outline of the handgun within the pocket of the coveralls was in plain view to the officers.

The salient point is that, unlike *Flippin*, wherein the gun was in a rigid cosmetics case (through which neither the gun nor its outline could be viewed or felt), and unlike the documentary evidence retrieved from the soft vinyl case in *Vaughan* (through which the outline of a weapon could have

---

**1.** *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**2.** *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979).

**3.** *United States v. Flippin,* 924 F.2d 163 (9th Cir.1991).

been felt if not also seen without opening the container), the gun in *Johnson,* or at least its outline, was clearly visible to the officers through the soft cloth, open pocket of the coveralls. The officers did not need to lift the garment, open it, or even pat it down, to have reasonably certain knowledge that a handgun was there within the lunge reach of a suspected criminal whom the officers had reasonable cause to be interrogating.

Because the officers in *Johnson* were not required to open the already opened pocket in the coveralls (container) to be aware a weapon was at hand, nor to squeeze or pat down the container (the coveralls)—or even to pick up the container (coveralls) for that matter—the instant case was not strictly speaking an extension of *Terry.* To be thus classified the officers would have had to extend the "patting down" from the clearly permitted outer clothing actually worn by Johnson to a "pat down" of his other garments or other soft containers nearby. But the officers did not squeeze, fondle or pat down the coveralls; they merely glanced at them and, without touching, viewed the outline of the gun.

This distinction is best understood through the realization that if the officers had merely been interrogating Johnson (which they had reasonable cause to do) without so much as attempting a *Terry* pat-down, their incidental viewing of the outline of the handgun through the pocket of Johnson's soft cloth coveralls, which were lying nearby in easy lunge reach, would clearly have been justified and the evidence not been suppressible. To say that such justifiable safety precautions taken by the officers somehow "eviscerates the warrant requirement" and "does great violence to the principle of *Terry* " constitutes both an exaggeration and an inaccuracy. The fact that the open view observation of the shape of the gun, through the coveralls pocket, occurred during or immediately after a *Terry* pat down, is a coincidence that has become a red herring in this case. *Johnson* should be interpreted more as a cautionary, safety seizure of a weapon essentially in open view and not as a true extension of *Terry*—which it might

have been had the outline of the gun not been seen through the soft container but been discovered by a true, hands on pat down of coveralls belonging to but not worn by Johnson at the time.