996 F.2d 1229
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Pedro PRIETO-VILLA, Defendant-Appellant.
 No. 91-50505.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 8, 1993.*
Decided June 24, 1993.
 
 Before BROWNING, FERGUSON and BOOCHEVER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Pedro Prieto-Villa ("Prieto") appeals from his conviction, pursuant to a conditional guilty plea, of cocaine possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Prieto contends that the district court erred in denying his motion to suppress certain evidence: a vial of cocaine discovered in his pocket when he was searched, and most notably two incriminating post-arrest statements.
 
 
 3
 Prieto was illegally arrested and searched without probable cause, although the police did have reasonable suspicion. The government argues that the vial and statements were admissible because they would have inevitably been discovered through independent, legal means. The government also argues that Prieto's second, far more incriminating statement was admissible because independent, intervening probable cause to arrest Prieto arose before he made that statement. Neither of these arguments has merit; the district court's denial of Prieto's suppression motion should be reversed.
 
 BACKGROUND
 
 4
 Much of the factual background of this case is already detailed in a published, prior proceeding, United States v. Prieto-Villa, 910 F.2d 601 (9th Cir.1990), and in the district court's findings of fact on remand from that proceeding. To summarize briefly, Prieto, along with two other men, entered an apartment that DEA agents suspected was the intended site of a substantial cocaine delivery. The agents entered the apartment with permission from one of the men and immediately asked for Alfredo Villegas, who subscribed to the utilities for the apartment and whom the agents had reason to believe was connected to the cocaine delivery. As the agents entered, Prieto closed his eyes and slapped and shook his head.
 
 
 5
 Villegas, who was one of the three men present, gave the officers oral permission to search the apartment. The officers discovered a pound of cocaine, approximately $650,000 in cash, and a gun. The only evidence linking Prieto to this contraband or the suspected cocaine transaction was that he was present in the apartment, that he reacted upon the officers' entry, and that his business card was one among many found in one of the apartment bedrooms.
 
 
 6
 After discovering the cocaine and money, the agents handcuffed all three men and told them they were under arrest. The officers searched the men and discovered a small vial of cocaine in Prieto's pocket. Prieto was informed of his right to remain silent, which he waived. He stated that he knew nothing about the money, the pound of cocaine, or the gun--he had come to the apartment to purchase a small quantity of cocaine from Villegas. Villegas was questioned shortly thereafter and gave the same explanation for Prieto's presence. Two hours later, at the police station, Prieto was questioned further. He made statements concerning his means of supporting himself and his reason for being at the apartment that were quite possibly incriminating, not because he admitted to participation in the major cocaine transaction but because the statements were not wholly plausible.
 
 
 7
 Prieto's motion to suppress the vial of cocaine and his post-arrest statements was denied and Prieto entered a conditional guilty plea. On appeal of the suppression motion, we reversed and remanded with instructions for the district court to make further findings, as required by Federal Rule of Criminal Procedure 12. Prieto-Villa, 910 F.2d at 610.
 
 
 8
 On remand, the district court made the following relevant findings of fact: a) when the police entered the apartment they had reasonable suspicion to detain Prieto; b) after the police entered the apartment Prieto "acted unusually. He closed his eyes, slapped his head, and shook his head"; c) when Prieto was handcuffed and told he was under arrest, before being searched, Prieto was in fact under arrest; d) at that point, the officers' reasonable suspicion had ripened into probable cause to arrest Prieto, and e) after being arrested, the agents searched Prieto and discovered a small vial of cocaine in his pocket while patting him down.
 
 
 9
 After the parties filed initial briefs on this appeal, we ordered supplemental briefing on the issue of inevitable discovery. Cf. Prieto-Villa, 910 F.2d at 610-11 (Boochever, J., concurring) ("I do not read the majority opinion as ruling out the admissibility of the [evidence] under the doctrine of inevitable discovery."). We asked the parties to address the admissibility of the vial of cocaine and the post-arrest statements on the assumption that the officers had reasonable suspicion justifying a pat down search of Prieto, but did not possess probable cause to arrest at the time of the search.
 
 ANALYSIS
 
 10
 * We review de novo the district court's denial of the motion to suppress. United States v. Suarez, 902 F.2d 1466, 1467 (9th Cir.1990). The ultimate conclusion as to the existence of probable cause or reasonable suspicion is a mixed question of fact and law requiring de novo review. United States v. Greene, 783 F.2d 1364, 1367 (9th Cir.), cert. denied, 476 U.S. 1185 (1986) (probable cause); United States v. Fouche, 776 F.2d 1398, 1402 (9th Cir.1985) (reasonable suspicion). Underlying factual findings are reviewed for clear error. Greene, 783 F.2d at 1367.
 
 
 11
 * In order to measure the permissible scope of the search of Prieto's person, we are first faced with the question whether the officers had reasonable suspicion or probable cause as to Prieto before searching him. The officers had reasonable suspicion justifying a frisk of Prieto's outer clothing for weapons. However, the officers did not possess probable cause to arrest Prieto and subject him to a thorough search incident to arrest.
 
 
 12
 "[P]robable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). Probable cause must be particularized with respect to each individual. Ybarra v. Illinois, 444 U.S. 85, 91-94 (1979). "[M]ere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause." Id.
 
 
 13
 Police must possess an articulable, reasonable suspicion, measured by the totality of the circumstances, that someone has committed, is committing, or is about to commit a crime, in order to justify an investigative detention. See United States v. Espinosa, 827 F.2d 604, 609 (9th Cir.1987), cert. denied, 485 U.S. 968 (1988). "The officer ... must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." United States v. Sokolow, 109 S.Ct. 1581, 1585 (1989) (internal quotation omitted).
 
 
 14
 In United States v. Berryhill, 445 F.2d 1189, 1193 (9th Cir.1971), we held that Terry v. Ohio, 392 U.S. 1 (1967), justified performing a pat-down search for weapons of "[a]ll companions of an arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer...." This broad statement was cast into doubt by Ybarra, 444 U.S. at 91-94, which seemed to require a greater degree of individualized suspicion. See United States v. Holzman, 871 F.2d 1496, 1502 (9th Cir.1989) (stating that reasonable suspicion does not arise merely from associating with a criminal) (citing Ybarra, 444 U.S. at 92-94).
 
 
 15
 In United States v. Vaughan, 718 F.2d 332 (9th Cir.1983), we cleared up some of the uncertainty regarding the permissible scope of police activity when the primary basis for suspecting someone of a crime is his or her association with a person or place as to which probable cause exists. We stated that probable cause does not arise merely from being in the company of someone for whom probable cause has been demonstrated through the issuance of a warrant. Vaughan, 718 F.2d at 334 n. 5 (citing Ybarra ). However, we went on to explain that in certain circumstances indicating a close personal connection, police officers are justified in briefly detaining and patting-down for weapons someone who is associated with a person or place as to which probable cause exists. Vaughan, 718 F.2d at 335 & n. 6 (reconciling Ybarra with Michigan v. Summers, 452 U.S. 692 (1981)). Because "one would expect that persons in a house or car are there by invitation or consent," police may be justified in briefly detaining someone who is not independently suspected of a crime when that person is in a house or car, and probable cause exists as to the house or car or as to the other persons in the house or car. Id. During the brief course of a detention of this sort--limited to ascertaining whether any further incriminating evidence exists implicating the person detained--the police may protect themselves by engaging in a Terry frisk for weapons if, as in Vaughan, they have cause to do so. Id.
 
 
 16
 The evidence implicating Prieto in criminal activity in this case consisted of his being present (along with one of his business cards) in a private apartment that was suspected to, and in fact did, contain contraband, and his reaction when five or more armed police entered the apartment asking for his friend. Both Vaughan and Michigan v. Summers placed "great reliance" on the fact that a neutral magistrate, rather than an officer in the field, had determined that there was probable cause to arrest the defendant's associates. See Vaughan, 718 F.2d at 335, Michigan v. Summers, 452 U.S. at 703. In this case, there was no such neutral determination, and without more there may not have been sufficient justification to detain Prieto. However, there was more in this case: the district court made a factual finding that "[b]y closing his eyes and slapping and shaking head, defendant Prieto reacted in a manner suggesting to the agents that Prieto knew his criminal activities had been revealed." Under the totality of the circumstances, this evidence justified the police in briefly detaining Prieto while they undertook a consensual search of the apartment.
 
 
 17
 The officers' brief detention of Prieto, which was proper, became more than a detention after the officers discovered the contraband: the district court found that Prieto was placed under arrest when he was handcuffed and told he was under arrest, prior to the search of his person. Prieto's liberty of movement was significantly curtailed under a strong show of force and authority, and a reasonable person in his position would certainly have believed himself or herself to be under arrest rather than free to terminate the encounter with police. See, e.g., United States v. Robertson, 833 F.2d 777, 780 (9th Cir.1987); Florida v. Bostick, 111 S.Ct. 2382, 2389 (1991).
 
 
 18
 The government argues that once the police discovered the contraband, the officers' reasonable suspicion had ripened into probable cause to arrest Prieto, thus justifying Prieto's arrest, and also justifying the search of Prieto's person as a search incident to arrest. Probable cause, however, had not arisen. The police had discovered nothing further linking Prieto to the suspected cocaine delivery or to the apartment. Indeed, the police had seized numerous papers throughout the apartment before questioning Prieto, many of which had Villegas' and another suspect's name on them, and none of which were connected to Prieto, aside from one among numerous business cards. Even after the search of the apartment, the police lacked sufficient particularized suspicion as to Prieto to amount to probable cause. See Ybarra, 444 U.S. at 91-94.
 
 
 19
 Because Prieto was arrested without probable cause, the search of Prieto's person was not valid as a search incident to arrest. Therefore, the vial of cocaine and Prieto's incriminatory post-arrest statements are properly excluded as "fruits of the poisonous tree." See Wong Sun v. United States, 371 U.S. 471, 485 (1963). The government, however, contends that the absence of probable cause does not preclude the admissibility of these pieces of evidence because they fit within one or more exceptions to the fruit of the poisonous tree doctrine. See, e.g., United States v. Ramirez-Sandoval, 872 F.2d 1392, 1395-96 (9th Cir.1989).
 
 B
 
 20
 The government first argues that, even if Prieto was wrongfully placed under arrest, the officers did not conduct an intrusive search incident to that arrest. Instead, the government contends, the officers only conducted a pat-down search, and that limited intrusion was justified by their reasonable suspicion of Prieto's criminal activity. In the course of this assertedly permissible frisk for weapons the officers discovered the vial of cocaine. At this point, the government contends that probable cause to arrest Prieto arose for the crime of cocaine possession, and therefore both the cocaine and Prieto's subsequent incriminating statements were admissible at trial.
 
 
 21
 In support of this argument, the government quotes Professor LaFave, who states that the Supreme Court has not definitively resolved the question of the admissibility of evidence discovered when "an officer tells a suspect that he is under arrest [when probable cause does not exist but reasonable suspicion does] and then conducts [only] the [limited] kind of weapons search which would pass muster under Terry." 3 Wayne R. LaFave, Search and Seizure, § 9.2(e) (2d ed. 1987).
 
 
 22
 As a preliminary matter, the government has failed to prove that the search of Prieto's person was a limited frisk for weapons that would pass muster under Terry. The officers at various times in their testimony used the phrase "pat-down" to describe their search of Prieto, but the government does not cite anywhere in the record where the officers so much as state that their search of Prieto was limited to a Terry frisk for weapons in Prieto's outer clothing.
 
 
 23
 More fundamentally, the government's line of argumentation is foreclosed by a long line of authority in this circuit that ends judicial inquiry when a defendant is illegally placed under arrest before a search, however limited, uncovers evidence. In United States v. Strickler, 490 F.2d 378, 381 (9th Cir.1974), we stated that "[b]ecause we have concluded that the officers' conduct ... was an arrest and not an investigatory detention, we have no occasion to decide whether the circumstances would have justified a mere investigatory stop." In United States v. Ramos-Zaragosa, 516 F.2d 141, 144 (9th Cir.1975), we held that the police had completed their arrest of the defendants before probable cause had arisen, and thus we excluded the evidence found after the defendants' arrest. We explained that "[s]uspicion sufficient to justify an investigatory stop cannot be employed to support an arrest. Nor can an arrest, unsupported by probable cause, be saved by redesignating it an investigatory stop." Id. Following Strickler and Ramos, we later reiterated the rule that "[i]f the defendant was arrested without probable cause, there is no need to determine whether an investigatory stop would have been justified." United States v. Patterson, 648 F.2d 625, 632 (9th Cir.1981).
 
 
 24
 The majority followed this same approach in United States v. Beck, 598 F.2d 497 (9th Cir.1979). After finding that the defendants had been arrested without probable cause, the majority did not even consider whether reasonable suspicion existed to justify introducing the evidence discovered in what it described as a pat-down or frisk. The dissent was even more explicit in this regard, although it did not agree that probable cause to arrest was lacking. The dissent conceded that evidence uncovered in a pat-down search within the scope of a Terry frisk must be suppressed if the pat-down occurs after the defendant has been illegally arrested. See Beck, 598 F.2d at 506 (Wallace, J., dissenting).
 
 C
 
 25
 Alternatively, the government argues that the evidence is admissible because Prieto would have been detained and frisked even if the agents had not arrested him without probable cause. In other words, even if the officers had realized that they did not possess probable cause to arrest Prieto, they would have patted him down for weapons. The government contends that the pat-down would have been legally justified on the basis of reasonable suspicion, and thus the officers would have inevitably discovered the vial of cocaine through legal channels independent of any improper arrest or search that actually occurred.[1]
 
 
 26
 This circuit has developed the doctrine of inevitable discovery, following Nix v. Williams, 467 U.S. 431 (1984), to allow the government to introduce at trial illegally obtained evidence if the government can meet its burden to prove that it would have inevitably discovered that same evidence if it had not acted illegally. See, e.g., Ramirez-Sandoval, 872 F.2d at 1399-1400. "[T]his circuit does not require that the evidence be obtained from a previously initiated, independent investigation." Id. at 1399.
 
 
 27
 The situations in which we have admitted evidence under the inevitable discovery doctrine have been fairly limited. In United States v. Andrade, 784 F.2d 1431, 1433 (9th Cir.1986), we found that cocaine discovered illegally was nonetheless admissible because the government proved that an inevitable step in the imminent, routine booking procedure was an inventory search that would have discovered the cocaine anyway. Cf. Ramirez-Sandoval, 872 F.2d at 1400 (explaining the limited reach of Andrade ). In Martinez-Gallegos, 807 F.22d 868, 870 (9th Cir.1987), we found the inevitable discovery doctrine to apply "where the only available procedural step (in the absence of the agents' illegal conduct) would have" uncovered the relevant evidence. Ramirez-Sandoval, 872 F.2d at 1400 (explaining the limited reach of Martinez-Gallegos ) (emphasis in original).
 
 
 28
 In this case, the government argues that the officers would inevitably have frisked Prieto and thus discovered the cocaine, but it does not cite any directly relevant evidence. The government supports its contention that the officers were concerned for their safety and therefore "obviously" would have frisked Prieto by stating that all three defendants were detained with their hands visible to the officers during the search of the apartment, and also that the officers conducted a security search for weapons in the cushions of the couch on which the defendants sat as they arrested the defendants. Thus, argues the government,
 
 
 29
 [b]ecause of Agent Georges' obvious and well-founded safety concerns, it is clear that even if there had been no probable cause, Appellant Prieto would have been frisked and the cocaine vial discovered. Thus, the cocaine vial is also admissible under the inevitable discovery doctrine.... [G]iven Agent Georges' demonstrated and well-founded safety concerns, it is obvious that Appellant Prieto was going to be frisked.
 
 
 30
 Appellee's Supplemental Brief at 24-25.
 
 
 31
 This is a speculative argument. Even if we were to accept that the officers inevitably would have frisked Prieto, the government's argument would fail. There is no testimony that the small vial felt like a weapon, and there is also no testimony that the vial was "an object whose contour or mass makes its identity [as contraband] immediately apparent...." Minnesota v. Dickerson, No. 91-2019, 1993 U.S. LEXIS 4018, at (U.S. June 7, 1993). The officers' suspicion that the object in Prieto's pocket might be contraband falls short of the requisite probable cause to justify removing it from Prieto's pocket. See id. at * 21.
 
 
 32
 In certain circumstances we may consider arguments not raised below, see, e.g., Brogan v. San Mateo County, 901 F.2d 762, 765 (9th Cir.1990), and thus the government may not have waived its inevitable discovery argument as a legal matter; even so, the government's failure to raise the argument below has, as a practical matter, precluded its opportunity to meet its burden of evidentiary proof.
 
 II
 
 33
 The government's alternative argument is that Prieto's post-arrest statements are admissible because intervening, independent probable cause arose after Prieto's arrest and before he made his incriminating statements. Thus, the government argues, the statements are admissible because they are purged of the taint of illegality, and are thereby not fruits of the poisonous tree. See United States v. Manuel, 706 F.2d 908, 91-12 (9th Cir.1983).[2]
 
 
 34
 The government relies on two bases for the panel to find that intervening, independent probable cause to arrest Prieto arose before he made his incriminating statement. First, the government points to the further evidence found in the apartment after Prieto's arrest and search, but before his interrogation. The further evidence found in the apartment did not in any way implicate Prieto personally; all it did was confirm the connection between the conspiracy in general and Villegas and his apartment. Thus, this basis is meritless.
 
 
 35
 Next, the government introduces Villegas' statements to police that Prieto had come to the apartment to purchase cocaine. This statement was made shortly after Villegas had observed the officers discover the vial of cocaine on Prieto, and after Prieto had made his first statement to police (that he had come to Villegas' apartment to purchase a small amount of cocaine), but before Prieto had made his second, far more incriminating statement. The government argues that the second statement is therefore admissible.
 
 
 36
 The government, however, has failed to meet its burden of proof to show that Villegas' statement was independent of the illegally discovered vial of cocaine on Prieto's person. The proper "focus [is] on 'the causal connection between the illegality and the confession,' " Dunaway v. New York, 442 U.S. 200, 217 (1979) (quoting Brown v. Illinois, 422 U.S. 590, 603 (1975)), or here, the causal connection between the illegality and the incriminating statement that came not from the defendant, but from someone else. Cf. United States v. Foppe, No. 91-50606, slip op. 5353, 5358-5361 (9th Cir. May 25, 1993) (in measuring whether evidence is purged of the taint of previous illegal activity, the court must ask "whether the illegal activity tends to significantly direct the investigation to the evidence in question") (quoting United States v. Chamberlin, 644 F.2d 1262, 1269 (9th Cir.1980), cert. denied, 453 U.S. 914 (1981)).
 
 
 37
 The government has not shown that Villegas' statement was independent of Prieto's illegal arrest and search. It has not shown that Villegas would have stated that Prieto was at the apartment to buy cocaine if Villegas had not just observed the officers' illegal discovery of the vial of cocaine on Prieto. The government acknowledges that Prieto's statement that he had come to the apartment to buy cocaine was exculpatory regarding the large-scale cocaine conspiracy. Given Villegas' other statements intended to exculpate Prieto from that conspiracy, the government has failed to prove that Villegas provided probable cause to arrest Prieto, independent from the illegal discovery of the vial of cocaine.
 
 CONCLUSION
 
 38
 For the foregoing reasons, the district court's denial of Prieto's suppression motion was in error. Prieto's conviction, pursuant to a conditional guilty plea, is therefore VACATED. We REMAND to the district court for further consistent proceedings.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This argument is distinguished from that in section B, above, because there the government argues that the actual scope of Prieto's search was limited and legally justified, and thus whether Prieto was improperly arrested prior to the search is irrelevant. Here, the government argues that whether Prieto was improperly arrested and searched is irrelevant because, even in the absence of the illegal search that actually occurred, the officers inevitably would have conducted a pat-down search for weapons that would have uncovered the vial of cocaine
 
 
 [2]
 The government does not argue that Prieto's statements were admissible because the connection between the illegal arrest and his statements was sufficiently attenuated to permit their use at trial. See Wong Sun, 371 U.S. at 486-88. Instead, the government rightly focuses on other evidence that it claims constitutes independent, intervening probable cause