**UNITED STATES of America,
Plaintiff,**

v.

**Frank J. GARNER, Jr., Defendant.**

**No. 1:00–CR–262.**

United States District Court,
N.D. Ohio,
Eastern Division.

July 19, 2000.

James R. Willis, Willis, Blackwell & Rodgers, Cleveland, OH, for Frank J. Garner, Jr.

Paul Anthony Mancino, Jr., Mancino & Mancino, James C. Young, Davis, Williams & Co., Cleveland, OH, for Lindira M. Hubbard.

Joseph M. Pinjuh, Office of U.S. Attorney, Cleveland, OH, for U.S.

## ORDER

GWIN, District Judge.

On July 10, 2000, Defendant Frank Garner, Jr. filed a motion to suppress [Doc. 19]. In this case, the United States charges Garner with possession with intent to distribute 6,992.8 grams of cocaine. Defendant Garner now seeks to suppress property seized during his detention by law enforcement authorities on May 16, 2000, as well as statements made during his detention. For the reasons that follow, the Court denies the motion to suppress.

### I. Background

On the afternoon of May 16, 2000, the Cleveland Police Department made a traffic stop that led to the arrest of Defendant Garner and Co-defendant Lindira Hubbard. At that time, Cleveland Police Officer Joseph O'Neill saw a white 1998 Ford Expedition traveling east on St. Clair Avenue in Cleveland. After Officer O'Neill noticed that the truck did not have a front license plate, he stopped the vehicle. Both the Ohio Revised Code and City of Cleveland Ordinance § 435.09a require such a license plate and provide for a citation for failing to have one. Lindira M. Hubbard was driving and Defendant Garner was in the front passenger seat.[1]

Officer O'Neill asked Hubbard for his license and registration. Hubbard responded that he did not have his license, that the truck did not belong to him, and that there might be an active warrant seeking his arrest. Officer O'Neill then instructed Hubbard and Garner to remain in the truck while he checked Hubbard's information and his driving status. Officer O'Neill discovered that Hubbard did not have a valid driver's license.

While Officer O'Neill was on his radio, Garner attempted to exit the truck several times. Officer O'Neill ordered Garner back into the truck on each occasion. Garner eventually exited the truck and began

---

1. Officer O'Neill also noticed that Garner was not wearing his seat-belt in violation of City of Cleveland Ordinance § 437.27(b)(2). Garner was ultimately issued a traffic ticket for this offense.

walking away. He carried a black duffel bag with him as he walked. Officer O'Neill ordered Garner back into the truck. Garner stated that he was late for work and continued to walk east down St. Clair Avenue. Rather than pursue Garner, Officer O'Neill remained with the truck and radioed for back-up.

Within moments, Cleveland Police Officer Paul Wilson arrived in his car to assist. Officer O'Neill told Officer Wilson what had just happened and asked Officer Wilson to bring Garner back to the truck.

Officer Wilson caught up to Garner and told him that he needed to return to Officer O'Neill's location. Garner was holding the duffel bag in his right hand and was shaking. Garner did not respond to Officer Wilson's instruction. Officer Wilson planned to drive Garner back to Officer O'Neill's location in his zone car. Officer Wilson again told Garner that he would have to return with him and then asked him what was in the bag. Garner responded that he had just "found" the bag near the railroad tracks and that it contained "jewelry or drugs." At this time, Officer Wilson escorted Garner to his zone car and sat him in the back seat. Defendant Garner sat in the back seat with the door open.

Officer Wilson conducted a pat-down of Garner for his own protection and told him that they would open the bag together to see what was inside. Upon opening the bag, Officer Wilson discovered numerous, brick-shaped packages which he believed were drugs. Officer Wilson placed Garner under arrest, locked him in the rear of his zone car, and returned to Officer O'Neill's location.

O'Neill and Wilson then arrested co-defendant Hubbard. During the arrest, Hubbard advised the officers that he had a gun. Following up, the officers found that Hubbard had a .45 semiautomatic in his pants. O'Neill and Wilson also found marijuana in plain view in a cup within the truck.

Garner acknowledges that O'Neill advised him of his constitutional rights before transporting him to the Sixth District Police Station. The truck was also taken to the Sixth District impound lot and searched. A small bag of marijuana was found in the console between the driver and passenger seats.

While at the station, Hubbard and Garner were again advised of their rights and interviewed by officers with the Caribbean Gang Drug Task Force. Garner waived his rights and made a statement. In his statement, Garner told the officers the implausible story that he had "found" the bag near the railroad tracks by London Avenue, and that additional bags were at the same railroad location. Garner never explained why, if he was taking the drugs to the police, he had not initially notified O'Neill or Wilson. He also failed to explain why he was traveling away from the police station if he was going to turn the drugs into the authorities.

On June 14, 2000, Hubbard and Garner were named in a two-count indictment charging them both in count one with possession with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2. Additionally, Hubbard was charged in count two of the indictment with using or carrying a firearm during or in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1).

Garner now asks the Court to suppress both the evidence seized from his duffel bag and the statements he made incident to his detention and arrest. The Court considers·Garner's motion below.

## II. Analysis

### A. Admissibility of Evidence in Duffel Bag

The Court first considers the admissibility of the evidence recovered from Defendant Garner's duffel bag. Garner argues that Officer Wilson violated the Fourth Amendment of the United States Constitu-

tion in detaining him and searching his duffel bag. The Court disagrees.

### 1. Lawfulness of Detention

First, the Court decides whether Officer Wilson lawfully detained Garner after he exited the vehicle. As explained below, the Court finds the detention was lawful.

[1, 2] The Fourth Amendment prohibits unreasonable seizures. Thus, law enforcement officers do not possess unlimited authority to detain individuals. Specifically, an officer cannot arrest an individual absent probable cause, i.e., a "fair probability" that the individual has either committed or intends to commit a crime. *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Further, an officer cannot even briefly detain an individual unless the officer reasonably suspects the individual has been involved in criminal activity. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Here, Officer Wilson detained Defendant Garner as he walked away from the scene of the traffic stop. Regardless if Officer Wilson's initial encounter with Garner is considered an arrest or simply a brief investigatory stop, the detention is lawful. Wilson had both probable cause to arrest and a reasonable basis for briefly detaining Garner.

■ Wilson had probable cause to arrest Garner because he failed to comply with a lawful police order. Under Ohio law, failure to comply with the lawful order of a police officer is a first degree misdemeanor. *See* OHIO REV. CODE 2921.33.1(A). An officer is authorized to arrest an individual for failing to comply with a lawful order. *See* OHIO REV. CODE 2935.03(A).

During the traffic stop, Garner failed to comply with an order issued by Officer O'Neill. After initially stopping the vehicle, Officer O'Neill ordered both occupants to remain seated in the vehicle. Garner disobeyed this order when he exited the truck and began walking away from the scene. O'Neill then ordered Garner to return to the truck. Again, Garner refused to comply with O'Neill's order.

■ Further, Officer O'Neill acted lawfully in ordering Garner to remain in the vehicle. The United States Supreme Court has recently held that a police officer may order passengers out of a vehicle during a traffic stop without violating the passengers' Fourth Amendment rights. *See Maryland v. Wilson,* 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). The Court reasoned that the public interest in protecting an officer's safety outweighed the minimal intrusion involved in requiring passengers to exit the vehicle. *See id.* at 413–15, 117 S.Ct. 882. The same rationale applies here. An officer may reasonably conclude that his safety is best protected by having the passengers remain in the vehicle. Further, the intrusion involved with having passengers remain in their vehicle is *de minimis*—the officer is merely maintaining the status quo. *See United States v. Moorefield,* 111 F.3d 10, 11 (3d Cir.1997) (holding that police officer may order passengers to remain in vehicle with hands up during traffic stop).

Defendant Garner refused to comply with Officer O'Neill's lawful order to remain in the vehicle. In doing so, Garner violated Ohio law. Thus, having discussed the situation with Officer O'Neill, Officer Wilson had probable cause to detain Garner.

■ Moreover, even if viewed as something less than an arrest, Officer Wilson's detention of Defendant Garner was lawful. A law enforcement officer may stop and briefly detain an individual the officer reasonably suspects has been or is about to be involved in criminal activity. *See Terry,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Such a detention, often referred to as a "*Terry* stop," allows an officer to do more than merely "shrug his shoulders" when he reasonably suspects criminal activity is afoot, but lacks the information necessary for probable cause:

The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at that time.

*Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

■ Reasonable suspicion is gauged from the totality of the circumstances. *See Sokolow,* 490 U.S. at 7, 109 S.Ct. 1581. This level of suspicion is, of course, less than proof of wrongdoing by a preponderance of the evidence. *See I.N.S. v. Delgado,* 466 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). The officer involved need only articulate some minimal, objective basis for the stop. *See Sokolow,* 490 U.S. at 7, 109 S.Ct. 1581.

■ Here, Officer Wilson had reasonable grounds for detaining Defendant Garner. From his conversation with Officer O'Neill, Wilson knew that Garner had already fled the scene of the traffic stop. And as he approached Garner, Wilson observed Garner visibly shaking. Under these circumstances, the Court finds that it was the "essence of good police work" for Officer Wilson to detain Garner "to maintain the status quo momentarily while obtaining more information." *Adams,* 407 U.S. at 145–46, 92 S.Ct. 1921.

## 2. Lawfulness of Search

Having determined that Officer Wilson lawfully detained Defendant Garner, the Court must now consider whether Wilson lawfully searched Garner's duffel bag. The Court finds the search was lawful.

Just as it prohibits unreasonable seizures, the Fourth Amendment prohibits unreasonable searches. Generally, law enforcement officers may conduct a search only pursuant to a valid search warrant. However, certain exceptions to the warrant requirement exist. In this case, the Court finds that Officer Wilson's search falls within such an exception.

■ First, if Garner's detention is viewed as an arrest, the duffel bag search is permissible as a search incident to a lawful arrest. *See United States v. Robinson,* 414 U.S. 218, 224, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment."). Such a search may extend to both the arrestee's person and the area within the arrestee's immediate control. *See Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). An area within an arrestee's control includes any area "into which an arrestee might reach in order to grab a weapon or evidentiary items...." *Id.*

■ The duffel bag was within Garner's immediate control. He held the bag in his hand and could have quite easily grabbed any weapons contained therein. Officer Wilson thus had the authority to search the bag.

■ The search is justified even if Officer Wilson did not actually arrest Garner, but rather briefly detained him as authorized under *Terry.* An officer may lawfully conduct a protective search while conducting a *Terry* stop. In particular, the Supreme Court has held that a police officer may perform a limited search for weapons during a *Terry* stop when the officer reasonably suspects the individual being detained may be armed and dangerous. *See Terry,* 392 U.S. at 30–31, 88 S.Ct. 1868.

■ Determining whether an officer's protective search is reasonable for purposes of the Fourth Amendment involves

two inquiries. First, the Court must decide whether the search was justified at its inception. Second, the Court must determine if the search was reasonably related in scope to its protective purpose. *See id.* at 19–20, 88 S.Ct. 1868.

■ To initiate a protective search, an officer need not be absolutely certain that a suspect is armed. Rather, the inquiry focuses on "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 20, 88 S.Ct. 1868.

■ Here, the Court finds that Wilson had a reasonable basis for concluding his safety was in danger. Defendant Garner had already disobeyed the order of Wilson's fellow officer and left the scene of a traffic stop. This act of disobedience, coupled with Garner's unstable demeanor, supported Wilson's belief that Garner posed a potential threat to his safety.

Next, the Court must determine whether Officer Wilson was justified in extending his protective search to Garner's duffel bag. Although the protective search endorsed in *Terry* involved only a pat-down of a suspect's outer clothing, the Supreme Court has held that a protective search need not be so limited. In *Michigan v. Long*, the Supreme Court recognized that a protective search can include areas from which an individual may gain immediate access to weapons, including the passenger compartment of an automobile. 463 U.S. 1032, 1046–47, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

■ In this case, Defendant Garner could have gained immediate access to a weapon contained in his duffel bag. And Garner informed Officer Wilson that the bag might contain drugs, thus alerting Wilson to the very real possibility that the bag also contained weapons. Wilson was therefore justified in ensuring the bag did not contain any weapons. In doing so, Wilson had no choice but to open the bag. The thick material from which the bag was constructed prevented Wilson from detecting weapons by merely patting the outside of the bag. *See United States v. Vaughan,* 718 F.2d 332, 335 (9th Cir.1983) (finding that agents unlawfully searched contents of a soft and thin briefcase when "[a]ny weapons could have been felt through the cover").

Thus, as explained above, Officer Wilson's search of the duffel bag is lawful as either a search incident to a lawful arrest or a protective search under *Terry.* The evidence recovered from the bag is therefore admissible.

### B. Admissibility of Statements Made During Detention

Defendant Garner next asks the Court to suppress various statements he made to law enforcement authorities on the day of his arrest. The Court finds no grounds for suppressing Garner's statements.

During the suppression hearing, Garner testified that the detectives questioning him refused to honor his request to speak to his attorney before answering any questions. Because the detectives failed to respect his invocation of his *Miranda* rights, Garner says any statements made to the authorities are inadmissible at trial.

Detective Ronald Ross also testified during the suppression hearing. Detective Ross's testimony differs from that given by Defendant Garner. According to Detective Ross, Garner received his *Miranda* warning and then agreed to speak with the authorities present. Detective Ross never indicated that Defendant Garner had asked to speak with his attorney.

The Court credits Detective Ross's testimony. The Court does so based upon its evaluation of the relative credibility of Ross and Garner. In light of his generally implausible testimony and his demeanor on the stand, the Court finds no grounds upon which to believe Garner's self-serving claim that the authorities ignored his request to speak with his attorney.

Thus, the Court finds that Garner received his *Miranda* warning, and voluntarily waived his right not to cooperate with authorities. Any statements Garner made to the authorities after waiving his *Miranda* rights are therefore admissible at trial.

IT IS SO ORDERED.